■ In the Matter of WILLIAM BRENNAN, Respondent, v ANNE L. CIBAULT, Appellant. [643 NYS2d 780] —Order unanimously reversed on the law without costs, petition dismissed and application granted in accordance with the following Memorandum: Petitioner is a United States citizen and respondent is a French citizen. They met in New York in June 1990, while respondent was attending a summer session at Fordham University. Approximately one year later, petitioner moved to Paris, France, where the parties were married on November 30, 1991. Their daughter, Zoe, was born in France on February 17, 1994. With the exception of visits to petitioner's mother in Oswego, New York, the parties lived in France until June 26, 1995, when petitioner and Zoe arrived in New York for a six-week visit with petitioner's mother. Petitioner had round-trip tickets, and was expected to return to France on August 4, 1995.

The marriage had been troubled, however, and in telephone calls during the months of July and August, the parties decided to separate. Petitioner indicated that he would not return to live in France if the parties were not going to remain together. They discussed sharing custody of Zoe, with her spending six months with each of them. Respondent testified at the hearing that she offered petitioner the first six-month period with Zoe but informed him that she expected Zoe to return to France on December 26, 1995. Petitioner admitted having those discussions but denied that he specifically agreed to the arrangement. In any event, in August 1995, respondent purchased round-trip tickets to fly to New York on December 30, 1995, and to return to France with Zoe on January 1, 1996. Respondent agreed to allow Zoe to remain with petitioner until December 30 to attend a family wedding.

In the fall of 1995, unbeknownst to respondent, petitioner sought legal advice about obtaining custody of Zoe. He was informed that Zoe would have to live in New York State for six months in order for a New York court to have jurisdiction over a custody proceeding involving her. He did not inform respondent of that information.

On December 28, 1995, petitioner commenced a proceeding in Oswego County Family Court seeking custody of Zoe. Respondent was served with an order to show cause on the same day that she arrived in New York to pick up Zoe. The order to show cause granted temporary custody of Zoe to petitioner and directed that Zoe remain within the jurisdiction of the court pending determination of the petition.

At an appearance before Family Court on January 4, 1996,

respondent made an oral application to dismiss the petition for lack of jurisdiction and on the further ground that Zoe was being wrongfully retained in New York in violation of the Convention on the Civil Aspects of International Child Abduction (Hague Convention; reprinted in USCS International Agreements) and its enabling legislation, the International Child Abduction Remedies Act (ICARA; 42 USC §§ 11601-11610). Following a hearing on January 4, 1996, the court denied respondent's application to dismiss the petition. The court held that Zoe was not a habitual resident of France within the meaning of the Hague Convention, and that, even if she were, she was not being retained wrongfully in New York because respondent had acquiesced to her residence in New York. Respondent appeals.

The court erred in concluding that Zoe was not a habitual resident of France. Because the Hague Convention does not define the term "habitual resident", its interpretation has been left to the courts. Courts interpreting that term have held that it refers to a "degree of settled purpose", as evidenced by the child's circumstances in that place and the shared intentions of the parents regarding their child's presence there (*see, Feder v Evans-Feder*, 63 F3d 217, 224; *Friedrich v Friedrich*, 983 F2d 1396, 1401). The focus is on the child rather than the parents, and on past experience rather than future intentions (*Friedrich v Friedrich, supra*, at 1401).

Application of those principles here compels the conclusion that France is Zoe's habitual residence. Zoe's parents were married there and had established professions and a home there, and Zoe was born in France and lived there for the first 16 months of her life, before she left for what was to be a six-week visit with her grandmother in New York. Those facts reflect a settled purpose on the part of the parties to establish Zoe's life in France.

The court's reliance on *In re Falls v Downie* (871 F Supp 100) is misplaced. In that case, the parties were not married and the child's mother, a German citizen, had given the child's father, a United States citizen, permission to take the child to live in the United States for an indefinite period of time. Here, when Zoe left France, respondent had consented to Zoe's absence for only six weeks. Eventually, she gave her consent for Zoe to remain until December 30, 1995, but she never agreed that Zoe remain beyond that time and certainly never agreed that she remain indefinitely.

Because Zoe's habitual residence was in France, and petitioner wrongfully retained Zoe in New York in derogation

of respondent's equal right to custody of her under the laws of France, Family Court should have dismissed the petition and issued an order pursuant to article 12 of the Hague Convention requiring that Zoe be returned forthwith to respondent in France. We hereby so order, noting, however, that, after the entry of the order on appeal, Family Court allowed respondent to return to France with Zoe pending a full custody hearing scheduled in Family Court in late May. Any future custody application should be made in the courts of France but, should they decline to determine the issue of custody of Zoe, petitioner would then be entitled to commence a custody proceeding in New York (*see, Ertel v Ertel,* 197 AD2d 900, 901). (Appeal from Order of Oswego County Family Court, McCarthy, J.—Custody.) Present—Pine, J. P., Fallon, Callahan, Doerr and Davis, JJ.