Bianca Huberdina **RAIJMAKERS–EGHAGHE, Petitioner,**

v.

**Frank E. HARO, Respondent.**

No. CIV. 00–40433.

United States District Court,
E.D. Michigan,
Southern Division.

March 15, 2001.

Thomas M. Schehr, Dykema, Gosset, Detroit, MI, for Petitioner.

Thomas M. Donnellan, Flint, MI, for Respondent.

### MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Petitioner's motion for summary judgment [docket entry 10]. On March 14, 2001, the Court held a hearing on the record in this case. For reasons set forth below, the Court grants in part and denies in part Petitioner's motion.

## I BACKGROUND

Petitioner is a Dutch citizen who lives in the Netherlands. Respondent is an American citizen living in Michigan. Pursuant to a divorce decree issued by the Superior Court of Arizona in 1995, Petitioner has legal custody of the parties' two children, Orion, aged eight, and Asia, aged six. The children have lived with Petitioner in the Netherlands from 1995 through the summer of 2000. In the summer of 2000, the children visited Respondent in Michigan pursuant to the divorce decree's visitation provision. That visit was to end on August 4, 2000.

Respondent claims that, as he attempted to put the children on an aircraft back to the Netherlands, Orion refused to board and had "an unexpected, emotional explosion." (Mem. for Resp't[1] at 2.) That outburst, maintains Respondent, led the airline's employees to refuse to board not just Orion—who was the only child alleged to have protested boarding the airplane—but Asia as well. Respondent then called Petitioner on the telephone. Respondent alleges that, after a rancorous exchange with Petitioner, he concluded that he "had no choice but to return home [with the children] and seek a psychologist's assistance" for the children. (Mem. for Resp't at 2.)

Respondent avers that it was only several months later that Orion divulged that he feared returning to the Netherlands because Dutch police had once raided the children's home and taken the children's step father into custody. Respondent also avers that Petitioner works nights and, "[a]fter over 20 psychotherapy sessions, Orion has revealed that [the children's step father] frequently leaves both children alone at night while he is conducting his personal affairs." (Mem. for Resp't at 3.)

After learning this information, Respondent alleges, he then instituted custody proceedings in Michigan state court. Those state proceedings are ongoing. On December 13, 2000, Petitioner filed a petition in this Court seeking the return of the children to the Netherlands pursuant to The Convention on the Civil Aspects of International Child Abduction ["the Hague Convention"] and its implementing legislation, the International Child Abduction Remedies Act ["ICARA"], 42 U.S.C. § 11601 et seq.

Although discovery is not closed, Petitioner moves for summary judgment. The parties agree that "the issue before the Court is whether, as a matter of law, Respondent's allegations are sufficient to meet an exception to the Hague Convention." (Stipulation and Order Re Briefing Schedule at ¶ 8.) During the hearing, Respondent agreed that, if the Court were to conclude that no exception to the Hague Convention were to apply, the Court would have to order the children's return to the Netherlands. The Hague Convention requires courts to order return under such circumstances "forthwith." *Toren v. Toren*, 191 F.3d 23, 27 (1st Cir.1999) (quoting Article 12 of the Hague Convention).

## II  LEGAL STANDARD

The Court will grant a motion for summary judgment if the movant demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

Toward that end, once the moving party carries the initial burden of demonstrating that no genuine issue of material fact is in dispute, the burden shifts to the non-mov-

---

**1.** "Mem. for Resp't" refers to the "Memorandum for Respondent" filed on February 9, 2001.

ing party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated:

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. 2505 (citations omitted); *see also Celotex,* 477 U .S. at 322–23, 106 S.Ct. 2548. The non-moving party, accordingly, must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### III  DISCUSSION

▮▮▮ The nations signing the Hague Convention had two objectives. The first was to secure the expeditious return of children who have been wrongly retained outside of, or removed from, any signatory country. Martha Bailey, *"Rights of Custody" under the Hague Convention,* 11 BYU J. Pub.L. 33, 34 (1997). The second was to guarantee that signatory nations respect the rights of custody and access under the laws of other signatory nations. *Id.* Or, as the Sixth Circuit has put it, the purpose underlying both the Hague Convention and ICARA is to "restore the preabduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *Friedrich v. Friedrich,* 78 F.3d 1060, 1064 (6th Cir.1996) (citations omitted). Toward that end, a parent alleging the wrongful removal or retention of a child may petition the courts of the nation to which the child was taken, or in which the child is retained, for that child's return.

▮▮ Both the United States and the Netherlands are signatories to the Hague Convention. *Turner v. Frowein,* 253 Conn. 312, 752 A.2d 955, 970 (2000). The United States implemented the Hague Convention by enacting ICARA. *Freier v. Freier,* 969 F.Supp. 436, 439 (E.D.Mich. 1996). Under ICARA, this Court may only determine rights under the Hague Convention, and not the merits of a custody claim. *Id.* Pursuant to ICARA, Petitioner seeks to have the children repatriated to the Netherlands, where a Dutch court would adjudicate any custody disputes between the parents. She also seeks costs and fees.

The order of proof under ICARA is as follows. First, a petitioner must show, by a preponderance of the evidence, that the removal or retention was wrongful. *Id.* (citing § 11603(e)(1)). To show wrongfulness, a petitioner must establish that: (a) the respondent removed or retained the child from the child's nation of habitual residence and; (b) under the law of the child's nation of habitual residence, the petitioner was exercising parental custody rights over the child at the time of removal or retention, or that she would have exercised said rights but for the removal or retention. *Id.* Obviously, Petitioner in this case was exercising parental custody rights over the children by reason of the divorce decree issued by the Arizona court.

If a petitioner were to meet that standard, the Court would then order the return of the child or children to the country of habitual residence unless the respondent were to establish that an affirmative defense exists. *Id.* at 439–40.

In this case, Respondent does not argue that Petitioner has failed to establish that the children were retained wrongfully under ICARA. The sole focus of this proceeding is to determine whether at least one of the two affirmative defenses that Respondent asserts precludes return of the children to the Netherlands. If not, as Respondent conceded during the hearing,

the Court would be obliged to order the children's return to Holland.

### A. *Grave Risk of Harm*

■ The first affirmative defense that Respondent asserts is the contention that the children would face a grave risk of physical or psychological harm were the Court to repatriate them to the Netherlands. Respondent makes this argument pursuant to Article 13b of the Hague Convention. To succeed, Respondent must prove by clear and convincing evidence that one of two situations exists. The Sixth Circuit describes those situations thus:

> First, there is the grave risk of harm when the return of the child puts the child in imminent danger [before] the resolution of the custody dispute—e.g., returning the child to a zone of war, famine, or disease. Second, there is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional dependence, *when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection.*

*Friedrich,* 78 F.3d at 1069 (emphasis added).

At the hearing, Respondent stated that he will not adduce evidence that Holland is tantamount to a "zone of war, famine, or disease." He also averred that he will not attempt to show that Dutch courts are "incapable or unwilling to give the child adequate protection" as that term is interpreted in light of *Friedrich.*

The Court therefore concludes that this is one of the rare cases in which summary judgment as to an issue is warranted before the close of discovery. Because Respondent admits that he will adduce no evidence that would establish either of the two narrow situations in which Article 13b, as interpreted by the *Friedrich* court, applies, this Court holds that there is no genuine issue of material fact as to this issue.

Because Respondent makes no other argument as to why an exception to the Hague Convention applies to Asia Haro, the Court must also order the repatriation forthwith of Asia to the Netherlands.

### B. *Maturity Exception*

■ Article 13 of the Hague Convention excuses the duty to return a child to the child's country of habitual residence if a respondent proves, by a preponderance of the evidence, that a child of sufficient maturity objects to repatriation and, in its discretion, the Court chooses to honor the child's wishes. *Blondin v. Dubois,* 238 F.3d 153, 166 (2d Cir.2001); *England v. England,* 234 F.3d 268, 272 (5th Cir. 2000). Pursuant to Article 13, Respondent argues that the Court should take into account eight-year old Orion's alleged objection to returning to the Netherlands. Respondent further argues that without hearing Orion's views, i.e., without allowing at least some discovery, the Court cannot properly consider what weight, if any, to accord to his aspirations. Petitioner retorts that the Court's power under the maturity exception is discretionary and argues that the Court, as a matter of law, cannot take into account the views of an eight-year-old. (Pet'r Br. at 8–10.)

The former contention is correct, but the latter argument is incorrect. The Hague Convention itself contains no age limit for applying this exception. *Id.* at 167. The Second Circuit, moreover, has affirmed a district court's consideration of an eight-year old's views regarding the grave-risk analysis under Article 13b, *id.* at 166–67, which is analogous to considering an eight-year old's views on returning to Holland under the maturity exception. The Court thus finds this authority from the Second Circuit persuasive.

■ As to the Court's power being discretionary, that argument is correct but misses the point. Discretion does not equate to license; even where the Court has discretion, it must not exercise that

discretion before it considers the relevant facts. *See Schlup v. Delo*, 513 U.S. 298, 348, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (Scalia, J., dissenting). In this case, a consideration of the relevant facts requires at least some discovery regarding the wishes and maturity of Orion.

The Court denies Petitioner's motion for summary judgment as to the maturity exception.

The Court notes that Respondent has not argued that six-year old Asia has made a mature decision that she does not wish to return to the Netherlands and that the maturity exception thus cannot prevent her repatriation to Holland.

During the hearing, both parties averred that a two-week period of discovery limited to psychological reports regarding Orion and the Court's *in camera* interview of Orion would provide the parties with enough information to pursue this issue. Given the Hague Convention's goal of speedy adjudication, *see Burton v. Oyekan*, No. 95 Civ. 5849, 1997 WL 66787, at *3 (S.D.N.Y. Feb.14, 1997), the Court will order such limited discovery.

### C. *Potential Separation of the Children*

Having concluded that Asia is wrongfully retained in the United States, and that Respondent has adduced no valid affirmative defense as to that retention, the text of the Hague Convention is such that the Court has no choice but to order Asia's return to the Netherlands "forthwith." *Wojcik v. Wojcik*, 959 F.Supp. 413, 418 (E.D.Mich.1997) (quoting Article 12); *Brennan v. Cibault*, 227 A.D.2d 965, 967, 643 N.Y.S.2d 780 (N.Y.App.Div.1996). Having concluded that discovery is necessary as to whether the maturity exception justifies keeping Orion in Michigan, however, the Court may not order his repatriation at this point. Indeed, pending the outcome of these proceedings, it is possible that this Court may never order the repatriation of Orion.

An unpleasant byproduct of this reasoning is that, at least pending the outcome of this Court's proceedings, Asia and Orion would be separated from one another. The Court cannot avoid this (potentially temporary) situation because Petitioner's counsel stated during the hearing that Petitioner would desire the return of Asia immediately in these circumstances, regardless of the pendency of proceedings regarding Orion. Such are Petitioner's rights under the Hague Convention.

Despite the law's mandate, however, the Court is reluctant to see Asia alienated from Orion. The Court recognizes that, often, it is harmful for young siblings to separate from one another. *See Aristotle P. v. Johnson*, 721 F.Supp. 1002, 1005–06 (N.D.Ill.1989). With that in mind, the Court reminds the parties that they are not obligated to avail themselves of every remedy the law affords. *See* 1 Kings 3:16–28. Petitioner, in that light, may consider whether it would be best to delay Asia's repatriation at least until this Court's determination of whether the maturity exception of Article 13 precludes Orion's repatriation.

That decision, however, is left to Petitioner and will have no affect on this Court's determination regarding Orion.

## IV. CONCLUSION

For reasons set forth above,

**IT IS HEREBY ORDERED THAT** Petitioner's motion for summary judgment is **GRANTED** as to the risk-of-grave-harm exception of Article 13b.

**IT IS FURTHER ORDERED** that Petitioner's motion for summary judgment is **DENIED** as to the issue of whether the maturity exception of Article 13 should preclude Orion's return to the Netherlands.

**IT IS FURTHER ORDERED** that a fourteen-day period of discovery shall commence on March 19, 2001.

**IT IS FURTHER ORDERED** that discovery shall be limited to psychological interviews and reports concerning Orion's maturity and purported desire to remain in the United States, as well as the Court's *in camera* interview of Orion.

**IT IS FURTHER ORDERED** that, at least forty-eight hours before Asia Haro returns to the Netherlands, Petitioner's counsel must inform the appropriate Dutch child-welfare authorities, and Holland's Central Authority, that Asia Haro is returning to the Netherlands. Petitioner's counsel must then immediately provide written certification to this Court that Petitioner has complied with this undertaking, and provide the names, titles, and telephone numbers of the specific officials who were so informed.

**IT IS FURTHER ORDERED** that, after the notification of Dutch authorities described above *and upon the written demand of Petitioner*, which her counsel shall serve upon Respondent's counsel and this Court, Respondent shall return Asia Haro, forthwith, to the Netherlands via commercial airline.

**SO ORDERED.**