Bryan Grant ANDERSON,
Plaintiff–Petitioner,

v.

Sandra ACREE, Defendant–
Respondent.

No. C–2–02–888.

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 12, 2002.

Scott A. Kossoudji, Vorys, Sater, Seymour & Pease, Columbus, OH, for Plaintiff–Petitioner.

Gary J. Gottfried, Gary J. Gottfriend Co., Columbus, OH, Defendant–Respondent.

## OPINION AND ORDER

GRAHAM, District Judge.

This action involves a petition filed pursuant to the International Child Abduction Remedies Act, 42 U.S.C. § 11601, *et seq.,* and the Hague Convention on Civil Aspects of International Child Abduction (hereinafter "the Hague Convention"). Plaintiff–Petitioner Bryan Grant Anderson (hereinafter "petitioner"), a citizen of New Zealand, seeks the return of his minor daughter, Beth Peggy Paterson. Beth was born on July 20, 1994, and is now eight years of age. Beth was removed from New Zealand by her mother, defendant-respondent Sandra Acree (hereinafter "respondent"), on December 19, 2000, and brought to the United States. Since coming to the United States, Beth has resided with her mother in Vincent, Ohio. Petitioner alleges that at the time of the removal of the child from New Zealand, Beth's habitual place of residence was New Zealand, that petitioner was exercising custody rights to Beth under New Zealand law, and that Beth's removal from New Zealand was wrongful under Article 3 of the Hague Convention. He seeks the return of the child to New Zealand to permit New Zealand courts to resolve the issue of what custody arrangements should be enforced in regard to his daughter.

By order filed on December 11, 2002, this court granted summary judgment to the respondent on the issue of whether the petition was filed more than a year after the removal of Beth from New Zealand. The court further concluded that even if equitable tolling could be applied to stay the one-year period in Article 12 of the Hague Convention, no grounds for equitable tolling had been presented in this case, and therefore, the respondent could proceed with her proof under Article 12 that Beth should not be returned to New Zealand because she is now settled in her new environment.

On December 11, 2002, the court heard evidence on the merits of the petition and the "settled" defense to the petition. The court also conducted an *in camera* interview of Beth for the purpose of ascertaining whether she was of sufficient age and maturity for the court to consider her views as to whether she should be returned to New Zealand. This matter is now before the court for a decision on the merits of the petition.

█ The goal of the Hague Convention is "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Preamble. This court has the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim. *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir.1993). Under 42 U.S.C. § 11603(e)(1), petitioner has the burden of showing by a preponderance of the evidence that the removal was wrongful. *Id.* If petitioner meets this burden, respondent then has the burden of proving that one of the exceptions to removal applies. The burden of proof applicable to the exceptions at issue in this case is proof by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(B).

Under Article 3 of the Hague Convention, a removal of a child is to be considered wrongful where:

(a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

These rights of custody may arise by operation of law, by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of the particular state. Hague Convention, Article 3.

█ In this case, it is not disputed that New Zealand was Beth's habitual residence at the time of her removal. Petitioner has produced evidence that he had custody rights in the form of visitation every other weekend. A judge of the Family Court in Christchurch, New Zealand issued an opinion which has been included in the record as Petitioner's Exhibit B. This opinion indicates that, although there was apparently no judicial order of custody regarding Beth, petitioner, as her father, would have been entitled to apply to the New Zealand court for a custody order, and that petitioner, by engaging in visitation, was exercising custody rights.

The Sixth Circuit has cautioned that once a district court determines that the parent exercised custody rights in any manner, this ends the inquiry, and the court is not permitted to consider whether the parent exercised the custody rights well or badly. *Friedrich v. Friedrich*, 78

F.3d 1060, 1066 (6th Cir.1996). Although respondent has presented evidence that the petitioner did not always see Beth on a regular basis, the court finds that there was sufficient evidence to conclude that petitioner had custody rights under New Zealand law and that petitioner was exercising those rights, albeit sporadically, at the time of Beth's removal from New Zealand. Thus, the court finds that petitioner has sustained his burden of proving that Beth's removal was unlawful under the Hague Convention.

The court will now address the exception of whether Beth is now settled in her new environment. Article 12 of the Hague Convention provides in relevant part:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.
>
> The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

At least one court has read Article 12 as allowing, but not requiring, the court to refuse to order the repatriation of a child on the sole ground that the child is settled in its new environment if more than one year has elapsed between the abduction and the petition for return. *See Blondin v. Dubois*, 238 F.3d 153, 164 (2d Cir.2001). The nature of and reason for this exception was discussed by the Second Circuit, as follows:

To the extent that Article 12 permits the courts of a party to the Convention to deny repatriation on this basis, it effectively allows them to reach the underlying custody dispute, a matter which is generally outside the scope of the Convention. *See* Explanatory Report at ¶ 107 ("[I]n so far as the return of the child is regarded as being in its interests, it is clear that after a child has become settled in its new environment, its return should take place only after an examination of the merits of the custody rights exercised over it—something which is outside the scope of the convention.") However, the Convention's framers recognized that although its aim is to ensure the return of abducted children without reaching the merits of underlying custody disputes, there could come a point at which a child would become so settled in a new environment that repatriation might not be in its best interest. *See id.* Therefore, they settled on the one-year time limit, which, "although perhaps arbitrary, nevertheless proved to be the 'least bad' answer to the concerns which were voiced in this regard." *Id.*

*Dubois*, 238 F.3d at 164. As the court noted in *In re Robinson*, 983 F.Supp. 1339, 1345 (D.Colo.1997), "[i]t would seem that, just as it is harmful to wrongfully remove the children from their habitual residence, it may also be harmful to remove them again if they have become connected to or 'settled' in the new environment."

■ The mere passage of time does not establish this exception. *In re Robinson*, 983 F.Supp. at 1345. Rather, the evidence must show that the child is "in fact settled in or connected to the new environment so that, at least inferentially, return would be disruptive with likely harmful effects.... [T]here must be 'substantial evidence of the child's significant connections.'" *Id.*

(quoting Public Notice 957, 51 Fed.Reg. at 10,509). *See also Zuker v. Andrews*, 2 F.Supp.2d 134, 141 (D.Mass.1998).

■ In determining whether the "settled" exception applies, the court is permitted to consider any relevant factor, including the particular circumstances surrounding the child's living environment. *Lops v. Lops*, 140 F.3d 927, 946 (11th Cir.1998). Factors which have been noted include the age of the child, the stability of the child's residence in the new environment, whether the child attends school or day care consistently, whether the child attends church regularly, the stability of the mother's employment or other means of support, whether the child has friends and relatives in the new area, and to what extent the child has maintained any ties to the country of habitual residence. *See In re Koc*, 181 F.Supp.2d 136, 152 (E.D.N.Y.2001); *Wojcik v. Wojcik*, 959 F.Supp. 413, 421 (E.D.Mich.1997).

In *Wojcik*, the court determined that the respondent had proved the exception where the children, who were eight and five years old at the time of the hearing, had been in the United states for eighteen months, had first lived with respondent's brother for eight months and then a rented house of their own, where they still lived, had consistently attended school or day care, had family in the area, and attended church regularly. *Wojcik*, 959 F.Supp. at 421. The court also noted that the mother had maintained stable employment for over a year and that there was no evidence that the children had maintained any ties to their previous country of residence. *Id.*

In *In re Robinson*, the court found that the children, who were six and ten years of age, were "settled" in their new community based on evidence that the children had lived in the same area for twenty-two months prior to the commencement of the action, were actively involved with an extended family, were doing well in school, actively participated in extracurricular activities, and had friends in school and elsewhere. *In re Robinson*, 983 F.Supp. at 1345–46.

In *Zuker*, the court concluded that a four-year-old child was settled where he had attended the same day care center despite the mother's move to a new apartment, had thrived academically and socially, played with his friends at home and at the homes of friends, and had established relationships with his teachers and his grandmother. *Zuker*, 2 F.Supp.2d at 141.

In contrast, in *In re Koc*, the court found that respondent had not sustained her burden of proof where the evidence showed that the child had lived in at least three different locations and attended three different schools, had lived at her current address less than a year, had been at her current school only four months, did not participate in extracurricular school-related activities, did not go to other friends' homes or socialize with her classmates, and did not have friends in the neighborhood. *In re Koc*, 181 F.Supp.2d at 153–54. The court also noted that the immigration status of the respondent and her child was uncertain, that they were both in the country illegally, that the petitioner had been denied a visa to visit the child due to the uncertain immigration status of respondent and her child, and that the mother relied on public assistance for her support. *Id.* at 154.

In *Mendez Lynch v. Mendez Lynch*, 220 F.Supp.2d 1347, 1363 (M.D.Fla.2002), the court concluded that the children of an Argentine father and an American mother were not well settled in their new environment in the United States where the children, following their removal from Argentina, had lived in seven different locations, including a domestic violence shelter, and

had received treatment for stress-related symptoms. The court also noted that the petitioner had visited the children while they were in the United States, and that the children's teachers stated that the children would have no trouble picking up Spanish again.

Respondent has presented uncontested evidence to the court on the issue of whether Beth is settled in her new environment. Respondent arrived in this country with Beth on approximately December 19, 2000. At the time of the filing of the petition in this case, Beth had been in this country almost twenty-two months. Since the time of her arrival, Beth has resided at the same residence in Vincent, Ohio. Beth resides with respondent, respondent's husband Joseph Acree, and Acree's fifteen-year-old daughter. There is no evidence that respondent is employed, but she and Beth are supported by respondent's husband. As of January, 2002, they were granted resident alien status in this country. As noted above, Beth is now eight years of age, which is "old enough to allow meaningful connections to the new environment to evolve." *In re Robinson*, 983 F.Supp. at 1345.

There is also evidence that Beth has attended the same school since her arrival. She completed the first grade at Little Hocking Elementary, and is now in the third grade there. The evidence shows that she does well in school and has many friends there, including at least two close friends. In her conversation with the court, Beth was able to describe her school experience in this country, while her recollection of school in New Zealand was sketchy, and she barely remembered attending the first grade there.

There is evidence that Beth has a close relationship with her second-grade teacher, Kay Hineman. Ms. Hineman testified that Beth had become "Americanized" and had lost most of her New Zealand accent.

Ms. Hineman testified that Beth was very social and had friends in the classroom. She also testified, based on her thirty-five years of experience as a teacher, that it was more difficult for a student to move to another school with different academics the longer the child has been in the current environment and formed attachments to friends.

Allison Laumann, Beth's third-grade teacher, testified that Beth gets along well with the other children and has lots of friends, and that she seemed comfortable coming into the third grade. She stated that Beth's third-grade classmates were interested in the proceedings in this case and indicated that they wanted Beth to stay, and that some students even wrote cards to Beth wishing her good luck.

Evidence was presented that Beth has also participated in basketball and cheerleading as extracurricular activities. In contrast, there is evidence that when Beth attended school in New Zealand, she lived in a rural location where such extracurricular activities were not offered by the schools.

Evidence was presented that Beth also attends skating parties and sleep-overs with friends, and invites friends to her house. There is evidence that Beth also has friends in her neighborhood with whom she socializes. Evidence was presented that when Beth lived in New Zealand, there were no children in her rural neighborhood.

The evidence further reveals that Beth has developed a close relationship with her stepfather and stepsister. There is evidence that she wants to change her name to Acree. Evidence was presented that Beth also has connections with her stepfather's extensive family, which includes many cousins her age. She goes to school with some of these cousins of similar age, and some of them also live within a five-

minute walk. There is additional evidence that Beth has formed an attachment to Jackie Crites, a friend of respondent and her husband. Beth refers to Ms. Crites as her "Auntie" and to Ms. Crites's two grandchildren, who are near Beth's age, as her "cousins." Ms. Crites testified that she sees Beth two to three times a week, that Beth frequently plays with her grandchildren and brings her friends to her house, and that she went on vacation to Myrtle Beach with Beth and her family. Evidence was also presented that Beth has formed a relationship with the two children of Stephanie Holland, another friend of respondent and her husband.

The evidence further shows that while Beth has maintained some connection with some of her family members in New Zealand, these connections are more sporadic. Although Beth communicated with petitioner by e-mail when she first arrived in this country, petitioner at some point stopped responding to her e-mails. The last time she communicated with petitioner was by telephone on her birthday. During this court's *in camera* conversation with Beth, she stated that she communicated occasionally with the family of her mother's sister, but not with her paternal grandparents. There is no evidence that she has maintained any connections with other friends in New Zealand.

■ This court also conducted an *in camera* interview of Beth pursuant to Article 13 of the Hague Convention. Article 13 provides in part:

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

This provision gives discretion to the court to decline to order the return of the child if the respondent proves by a preponderance of the evidence that a child of sufficient maturity objects to repatriation. *Raijmakers-Eghaghe v. Haro*, 131 F.Supp.2d 953, 957 (E.D.Mich.2001). While this provision provides a separate ground for denying a petition for repatriation, the objections of a sufficiently mature child may also be relevant in considering whether some other exception has been established. *See Dubois*, 238 F.3d at 166 (unnumbered provision of Article 13 is both a separate ground for refusing repatriation and a factor which may be considered in reviewing risk of harm exception under Article 13(b)). In this court's view, the objections of a mature child to being returned to his or her native country may also be relevant to the determination of whether the child is well settled in his new environment. There is no age limit for applying this exception. *Id. See also Dubois*, 238 F.3d at 167 (rejecting argument that child of eight was immature as a matter of law and upholding finding of district court that child was sufficiently mature to consider her views).

■ The court interviewed Beth in chambers, without the robe and formal trappings of the courtroom. Her mother was not present. Beth was composed and did not appear to be unduly nervous or afraid. She calmly and readily answered the court's questions. She was able to point to New Zealand on a globe in the office. She appeared to understand the court's questions, and also indicated her understanding of the difference between truth and falsehood and of her obligation to tell the truth. The court saw no reason to conclude that Beth's answers to the court's questions were the product of any coercion or undue influence on the part of respondent. Based on this court's observations of Beth and the other evidence presented in this case, this court finds. that Beth is of sufficient age and maturity to permit this court to consider her views as

to whether she should be returned to New Zealand.

Beth told the court that she did not want to return to New Zealand without her mother, and that she wished to stay with her mother. The court notes that petitioner has presented evidence that Beth told him that she wished to return to New Zealand. Even if petitioner's statement is accepted, Beth's statements to him might have some connection to the plans of respondent and her husband to some day return to New Zealand and build a house. These plans are years in the future, and were not currently feasible in light of Mr. Acree's business obligations. Even if petitioner's statement concerning Beth's wishes is accepted, his statement falls short of indicating that Beth expressed a wish to return immediately to New Zealand without her mother. In light of Beth's statements directly to this court, petitioner's evidence is not entitled to any weight.

Although Beth's desire to remain in this country would furnish an independent basis for declining to return her to New Zealand, this court will not rely on this ground alone, but will also consider it in connection with the issue of whether Beth is settled in her new environment. The court finds that Beth's desire to remain here with her mother provides further evidence of the fact that Beth is well settled in her new home in Vincent, Ohio, and that ordering her return to New Zealand would result in a significant and traumatic change in her life.

Petitioner argued at the hearing that the evidence of Beth's teachers that she was intelligent and adjusted easily to her new school also indicated that she would have no problems adjusting if she were sent back to New Zealand. However, this is speculation unsupported by any evidence. The fact that Beth has adjusted well to life in the United States does not mean that she would not encounter problems to readjusting to life in New Zealand, particularly if her mother could not accompany her back to New Zealand. There is no evidence before the court that the circumstances of Beth's life in the United States are similar to what they were in New Zealand, or that the differences are such that Beth would be able to adjust easily to the change at this point.

■ This court finds that respondent has presented substantial evidence that Beth has significant connections with her new environment, and that respondent has sustained her burden of proving that Beth is well settled in her new environment. Balancing this finding against the purposes of the Hague Convention, the court concludes that the harm which would be caused by uprooting Beth from her current home in Vincent, Ohio, outweighs the considerations behind the Hague Convention. Therefore, the court will decline to order Beth's return to New Zealand. The court notes that this is not a decision on who should have custody of Beth, or where she should ultimately live, but merely a holding that the custody decision should be made in the United States. *See Wojcik*, 959 F.Supp. at 421.

In accordance with the foregoing, the petition for the return of Beth to New Zealand is denied.

It is so ordered.