**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 20, 2009

Charles R. Fulbruge III
Clerk

No. 08-31003
Summary Calendar

ANNE BENNET MORRISON DIETZ,

Plaintiff-Appellee,

versus

JOHN FORD DIETZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana
No. 6:07-CV-1398

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

This case concerns the Convention on the Civil Aspects of International

Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670 (the "Convention"), a treaty

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11611. The district court held that Anne Dietz had met her burden of proof to make out a claim under the Convention and that John Dietz had not met his burden of proof to assert affirmative defenses. On appeal, John contends that the court erred in rejecting two of those defenses—the "one year/well settled" exception and the "child objects/age and maturity" exception. Finding no error, we affirm.

## I.

John and Anne Dietz were married in New Mexico in 1990. They had two children: Albert in 1994 and Angus in 1998. Throughout the 1990's, the family lived in various places throughout the American Southwest before moving to Mexico in 1999. Soon after that, the marriage soured, and the couple divorced. The Mexican divorce decree granted Anne custody of both children and John visitation rights.

At first, John continued to live and work in close proximity to Anne, so the children saw both parents regularly. Later, the children lived at various times with each parent, though more often with their father. The boys would often accompany John on his frequent business trips to the United States.

In January 2006, Anne permitted Albert, who was attending class through an internet school, to travel with his father to the United States and to reside temporarily with his paternal grandparents in Louisiana. John then sued for full custody of Albert and Angus in Mexican court in March 2006. In May 2006, fearing for his life, John abandoned the custody suit, removed Angus from school, and fled with his new family to Louisiana.

After pursuing criminal charges against John in a Mexican court in the summer of 2006, Anne, in May 2007, filed in Louisiana state court an application for return of the children under the Convention; John removed the action to

federal court. After a bench trial, the district court, applying the Convention, determined that Albert and Angus had been wrongfully removed from Mexico and that John had failed to meet his burden of proof for any of the Convention's affirmative defenses.

## II.

John claims that the district court erred when it determined that he did not make out a successful defense under the Convention's "one year/well-settled" exception with respect to his oldest son, Albert. That exception comes from article 12 of the Convention: At the "commencement of the proceedings . . . [if] a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith." Additionally, it instructs that "even where the proceedings have been commenced after the expiration of the period of one year . . . [the authority] shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment." Convention, art. 12.

We review conclusions of law *de novo* and findings of fact for clear error. *See, e.g.*, *England v. England*, 234 F.3d 268, 270 (5th Cir. 2000). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005) (citation omitted).

The district court found that John took Albert from Mexico to Louisiana in January 2006, that John took Angus from Mexico to Louisiana in May 2006, and that Anne sued in state court on July 13, 2007. The court also found that the boys had become "well-settled" in their new environment. If the case consisted merely of these bare facts, it would seem the court erred in failing to give effect to John's article 12 defense.

The court determined, however, that what appeared to be a late filing from

Anne was in fact timely, because the one-year period should be equitably tolled. Both ICARA and the Convention make no mention of equitable tolling, yet it is well established in caselaw that it applies. *See, e.g.*, *Van Driessche v. Esezeoboh*, 466 F. Supp. 2d 828, 850 (S.D. Tex. 2006). The district court found that, despite attempts to locate her sons, Anne Dietz did not know definitively where they were until August 2006, meaning that her July 13, 2007, filing was within Article 12's one-year period.

John does not attack the use of equitable tolling as such. Indeed, he does not appear to question the court's application of tolling to the summer of 2006.[1] Rather, he argues, because the record reflects that Anne knew where Albert was during the first part of 2006, that period should not be tolled under the court's stated rationale that Anne could not locate the boys. And thus, even by tolling the one-year requirement from the time Angus was removed on May 19, 2006, until August 2006, the time period between Albert's removal (January 2006) and Anne's filing (July 13, 2007) still exceeds one year.

John is correct that the record shows that Anne knew that Albert was residing with his grandparents in Louisiana from January 2006 until May 21, 2006. But the record shows just as plainly that Albert was in Louisiana during that period, because Anne consented to his being there. She did not have reason to believe that what was a temporary visit would in fact become permanent

---

[1] To the extent, if any, that John does question equitable tolling, the court's determination is not clearly erroneous. This conclusion is based on (1) the fact that Anne could not definitively locate the boys until August 2006 in light of her inability to establish contact with the boys despite repeated attempts to do so before that date; (2) the refusal of John's family in Gueydan to provide information about John's current whereabouts despite requests; and (3) John's history of taking frequent, prolonged business trips with the boys throughout the American Southwest, where he had business and property interests. Nor is the application of the law to these facts incorrect. *See, e.g.*, *Furnes v. Reeves*, 362 F.3d 702, 723-24 (11th Cir. 2004); *Van Driessche*, 455 F. Supp. 2d at 852; *Giampaolo v. Erneta*, 390 F. Supp. 2d 1269, 1281 (N.D. Ga. 2004).

until Angus was removed, without her consent, on May 21, 2006.[2] It is, therefore, that date––not January 2006––on which the clock began to run on the article 12 one-year period. The district court did not err.

## III.

John claims that the district court erred by failing to give effect to Albert's and Angus's stated preference to remain with their father in the United States. Article 13(b) of the Convention provides, in relevant part, that "[t]he judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." ICARA provides that the party opposing the child's return must establish the child's maturity by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(A) (1994).

At the time of trial, Albert was thirteen years old and Angus was nine. After reviewing the report of the child psychologist, Dr. Bouillion, and observing Albert's and Angus's testimony at trial, the district court concluded that neither had attained the age and degree of maturity required by article 13(b) to take his views into account. That was a factual determination. *See England*, 234 F.3d at 272. And, given the reliance on live oral testimony, "the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witness[es]." *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005).

With regard to Albert, the court found him to be "highly defensive," noting that he spoke in a "short" and "curt" manner in a "low monotone" and kept his

---

[2] *See, e.g.*, *In re Ahumada Cabrera*, 323 F. Supp. 2d 1303, 1312-13 (S.D. Fla. 2004) ("[T]he Respondent's retention only became wrongful under the Convention when the Petitioner became aware of the Respondent's true intention not to return."); *see also Zuker v. Andrews*, 2 F. Supp. 2d 134, 140 (D. Mass. 1988) ("Until he knew that Andrews would not return, it would be unfair to require Zuker to file a petition based on alleged wrongful retention.").

"eyes cast downward." Obviously, these are characteristics that a trial court judge, armed with the contemporaneous powers of sight and sound, is better suited to observe than is an appellate panel armed only with a transcript. Nevertheless, the record lends support to the district court's observations.

For instance, the report of Dr. Bouillion, who examined Albert and Angus and testified in court as to his observations, noted that Albert "demonstrated anxiety during the interview." Bouillion also observed that despite showing "high average to superior intelligence," Albert displayed "only average verbal skills," performed poorly in school, had been involved in psychotherapy, "needs help in addressing his self-esteem and mood problems," and "clearly demonstrates social and emotional immaturity compared to his same age peers."

The district court's conclusion that Albert was immature for purposes of the Convention's article 13 defense is in keeping with precedent. For example, in *England*, we concluded that whether a child is of sufficient age and maturity is a fact-intensive process, and we declined to hold, as a matter of law, that any particular age is sufficient or insufficient to meet the defense.[3] We also noted the "narrowness of the age and maturity exception to the Convention's rule of mandatory return," going so far as to *reverse* the trial court's determination that a 13-year old girl was of sufficient age and maturity where the record showed signs of an unstable home life, learning disabilities, and confusion. *England*, 234 F.3d at 272-73.

The district court did not credit Angus's preference, because it found that his views were "unduly influenced by his father." The court credited Anne's testimony that Angus said to her, "Daddy's told me this is all about money and the house, and you want to take this all away from us and put us in foster care." *Id.*

---

[3] *See England*, 234 F.3d at 272 n.4 ("We do not hold that as a matter of law a 13 year-old is not sufficiently mature for her views to be considered. We do hold that, on this record, a 13 year-old has not been shown to be mature enough for her views to be considered.").

On the witness stand, Angus stated as much himself, adding that he had obtained the information about his mother's supposed motives from his father, who would show him e-mails from Anne's brother.[4]

The district court's ability to conclude that Angus's views were unduly influenced by his father finds ready support in law. "A child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child." Pub. Notice 957, 51 Fed. Reg. 10,494, 10,509 (1986). In *In re Robinson*, 983 F. Supp. 1339, 1344 (D. Colo. 1997), the court concluded that an eleven-year-old child's casually referring to being "settled" (a legal term under the Convention), in response to questions from the court, evidenced undue influence. Similarly, in *Hazbun Escaf v. Rodriguez*, 200 F. Supp. 2d 603, 615 (E.D. Va. 2002), the court found the thirteen-year old child, "like all adolescents[,] . . . susceptible to suggestion and manipulation," noting that "some of his statements regarding reasons for staying in the United States appear[ed] to be the product of suggestion, echoing the preferences of his father."

This case is the reverse of *England*: We are asked whether to defer to the conclusion that the children are immature. "Given the fact-intensive and idiosyncratic nature of the inquiry, decisions applying the age and maturity exception are understandably disparate." *DeSilva v. Pitts*, 481 F.3d 1279, 1287 (10th Cir. 2007). It is therefore not surprising that there are cases in which children as young as eight have been found to be of sufficient age and maturity.[5] But that

---

[4] In his report for the court based on interviews with the children, Bouillion notes that "[Angus] feels that the mother is more interested in the money and the house than he and his brother." Though silent about Angus's involvement, Bouillion mentions that Albert "is too involved in adult issues and focused on the only reason the mother wants them back in Mexico is so she can sell the family home."

[5] *See, e.g.*, *Anderson v. Acree*, 250 F. Supp. 2d 876, 883 (S.D. Ohio 2002) ("Beth was composed and did not appear to be unduly nervous or afraid. She calmly and readily answered
(continued...)

does not preclude contrary results in other cases.

Here, the district court was better positioned to judge the children's maturity than are we. The court's factual determination that Albert and Angus were not sufficiently mature to take account of their views is not clearly erroneous, and there is no ground for reversal.

AFFIRMED.

---

[5] (...continued)
the court's questions. She was able to point to New Zealand on a globe . . . . She appeared to understand the court's questions, and also indicated her understanding of the difference between truth and falsehood . . . . The court saw no reason to conclude that Beth's answers to the court's questions were the product of any coercion or undue influence on the part of respondent. Based on this court's observations of Beth and the other evidence presented in this case, this court finds that Beth is of sufficient age and maturity to permit this court to consider her views . . . .").