**Affirmed and Affirmed as Modified and Opinion Filed June 4, 2014**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-00864-CV

### IN THE INTEREST OF S.H.V. AND P.J.V.C., CHILDREN

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-13-00307**

## OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice FitzGerald

Appellee ("Father") filed a petition for return of his two children to Panama under the Hague Convention on the Civil Aspects of International Child Abduction. The trial judge granted the petition, finding that the children were habitual residents of Panama at the time appellant ("Mother") wrongfully retained possession of the children in Texas. Mother appeals. We modify the trial judge's order and affirm the order as modified.

### I.  BACKGROUND

The following facts find support in the evidence or are conceded by the parties. Father and Mother met in 1998 and began dating. At that time, Father was already involved in a partnership with two other people to build a fishing lodge somewhere in the Caribbean. Father and Mother were married in January 2000. Father moved to Panama the next month, and he has

lived there ever since. From 2000 to 2005, Father built an "adventure travel lodge" called Tranquilo Bay on the Panamanian island of Bastimentos, and he still lives there. Father and Mother's older son, S.H.V., was born in Texas in September 2002. Mother and S.H.V. joined Father in Panama in 2004 and stayed about a year. Mother and S.H.V. returned to the United States near the end of 2005, stayed about nine months, and returned to Panama in September 2006. Mother and S.H.V. lived in Panama continuously from then until August 2012. Father and Mother's younger son, P.J.V.C., was born in Panama in August 2008 and lived there until August 2012.

Father and Mother separated in March 2010, and she moved to a town called Bocas del Toro located on a different but nearby island. That same month, Father filed a child-custody case in Panamanian court. He obtained a court order giving Mother custody of the children and giving Father possession of the children every weekend. The order also prohibited the children from leaving Panama. Other court orders followed. According to Father, the travel restriction was lifted for a time and then reinstated. In August 2012, Mother removed the two children from Panama to Texas.

In January 2013, Father commenced this case by filing his petition under the Hague Convention in Dallas County seeking return of the children to Panama. After a hearing, the trial judge signed a temporary order allowing Father to take the children back to Panama for spring break in March 2013. Father did not return the children to Texas at the end of spring break, and Mother filed a motion to enforce the temporary order. Father's petition and Mother's motion to enforce were heard together on April 9, 2013. Less than an hour before the beginning of the hearing, Mother filed two motions. In one, she sought appointment of an attorney ad litem or a guardian ad litem for the children, and in the other she asked the judge to conduct an in camera interview with the children. At the end of the hearing, the judge orally opined that Panama was

–2–

the habitual residence of the children. Three weeks later, the judge signed an order granting Father's petition and awarding him travel expenses and attorneys' fees.

Mother timely appealed. Father timely filed a notice of cross-appeal, but he ultimately opted not to raise any cross-appeal issues in his appellate brief.

## II. ANALYSIS

Mother raises three issues on appeal. In her first issue, she challenges the trial judge's decision to grant Father's petition. In her second issue, she challenges the award of fees and expenses to Father. In her third issue, she contends that certain language in the trial judge's order exceeded the judge's authority by modifying the Panamanian possession order currently in effect. We resolve her first two issues against her but conclude that her third issue is meritorious.

### A. Return of the children under the Hague Convention

#### 1. Applicable law

The purpose of the Hague Convention is to protect children from the harmful effects of wrongful removal from the country of their habitual residence and to establish procedures to ensure their prompt return to that country. To that end, the Convention seeks to preserve the pre-removal status quo of the parties' custody arrangements and to deter a parent from crossing international boundaries to find a more sympathetic court. The Convention is based on the principle that the country of a child's habitual residence is best suited to determine questions of child custody and access. Thus, in a case like this one, the trial court is authorized only to determine rights under the Convention; the court has no authority over any underlying custody claims. *See generally In re J.G.*, 301 S.W.3d 376, 378–79 (Tex. App.—Dallas 2009, no pet.).

The Hague Convention has been implemented in the United States through the International Child Abduction Remedies Act ("ICARA"). *See* 42 U.S.C.A. §§ 11601–11610

(West 2013). The ICARA gives concurrent jurisdiction to federal district courts and state courts to hear cases arising under the Convention. *Id.* § 11603(a). It also establishes the procedures whereby a parent can petition for the return of a child who has been wrongfully removed from the child's habitual residence to the United States. *See generally id.* § 11603. A petitioner establishes wrongful removal by proving, by a preponderance of the evidence, that the removal of the child was made in breach of the rights of custody of the petitioner under the law of the country in which the child habitually resided immediately before the removal. *Id.* § 11603(e)(1)(A) (burden of proof); Hague Convention art. 3, 19 I.L.M. 1501, 1502 (1980) (when removal considered wrongful); *see also In re Vernor*, 94 S.W.3d 201, 208 (Tex. App.—Austin 2002, no pet.) (reciting elements of Hague Convention claim). The ICARA also recognizes certain affirmative defenses established by the Convention. 42 U.S.C.A. § 11603(e)(2). If a respondent proves an affirmative defense, the judge has the discretion to refuse to order the return of the child to his or her habitual residence. *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 278 (3d Cir. 2007). Courts have held that affirmative defenses under the Convention should be narrowly construed. *E.g.*, *id.*; *see also England v. England*, 234 F.3d 268, 272 (5th Cir. 2000).

### 2. Habitual residence

Mother argues that the trial judge abused her discretion by ruling that Panama was the children's habitual residence under the Convention. In *J.G.*, we held that the habitual-residence determination requires a two-part inquiry. The first consideration is the last shared intent of the people entitled to fix the children's residence—typically the parents. Normally, the parents' last shared intent is decisive. But the court should also consider a second factor, which is whether the evidence unequivocally shows that the children have acclimatized to a new location and thereby acquired a new habitual residence, despite any conflict with the parents' last shared

intent. *See In re J.G.*, 301 S.W.3d at 381. The trial judge did not make separate findings about the parents' last shared intent or about acclimatization, but because she concluded that Panama was the children's habitual residence we will presume she resolved both factors in favor of Father's position. *See id.* at 378, 381–83 (reviewing both factors when trial judge's finding was limited to ultimate issue of habitual residence). We review a finding of a child's habitual residence under the Convention for abuse of discretion. Accordingly, we defer to the trial judge's factual determinations if they are supported by the evidence, and we review any conclusions of law de novo. *Id.* at 380–81.

Mother does not dispute that Father adequately proved his own intention to make Panama the children's habitual residence. Rather, she contends that Father adduced no evidence that Mother ever shared that intention. She contends that the only intention she ever shared with Father was their original intention to move the family back to the United States after they had established their business in Panama so that S.H.V. could go to school in the United States. The question presented is whether the trial judge could reasonably find that Mother's intentions later changed such that she shared an intent with Father to make Panama the children's habitual residence. We hold that the judge's implicit finding was reasonable. Father testified that Mother moved to Panama "permanently" in 2006. Mother argues that this testimony was conclusory, *see Riner v. Neumann*, 353 S.W.3d 312, 321 (Tex. App.—Dallas 2011, no pet.) ("A conclusory statement is one that does not provide the underlying facts in support of the conclusion."), but we conclude that his testimony is competent evidence because it is supported and explained by other evidence such as the following:

- Father testified that before Mother and S.H.V. returned to Panama in 2006, Mother called Father and told him it was better to live in Panama than to be a single mother in the United States by herself.

- Father testified that Mother lived in Panama continuously from 2006 to 2012.

–5–

- Father testified that he and Mother had another child, P.J.V.C., who was born in Panama in 2008.

- Mother testified that she applied for and received a permanent residence card in Panama.

- Mother testified that she opened a business and attempted to support herself in the Panamanian town of Bocas del Toro, where she rented an apartment for two and a half years. She sent the older child to an international school in Bocas del Toro.

Based on the foregoing evidence, the trial judge reasonably could have concluded that Mother agreed to make Panama the children's habitual residence at some point between 2006 and 2012. Although Mother also testified that she never wanted Panama to be her home, this testimony does not exclude that possibility that she still agreed, however reluctantly, to make Panama the children's habitual residence. She testified that she applied for residency status in Panama only to avoid deportation and separation from her children, but it was the judge's prerogative to accept or reject her testimony. *See LaCroix v. Simpson*, 148 S.W.3d 731, 734 (Tex. App.—Dallas 2004, no pet.) ("In a bench trial, it is for the court, as trier of fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony."). The trial judge did not abuse her discretion by implicitly concluding that the parents' last shared intent was to make Panama the children's habitual residence.

We next consider whether the evidence unequivocally established that the children had acclimatized to a new location to such an extent that they acquired a new habitual residence notwithstanding their parents' last shared intent. *See In re J.G.*, 301 S.W.3d at 381, 382–83. In her brief, Mother assumes that the parents' last shared intent was to make the United States the children's habitual residence, so she argues that the children are not acclimatized to life in Panama. But this assumption is flawed. Because there was evidence to support the implicit finding that Panama was the country of the parents' last shared intent, the proper question is

whether the evidence unequivocally shows that the children have become so acclimatized to life in the United States that this fact should override the parents' last shared intent. We conclude that the evidence does not unequivocally establish this proposition, and that the trial judge did not abuse her discretion by implicitly rejecting it. The younger child, P.J.V.C., lived in Panama from his birth in 2008 until Mother removed him to Texas in August 2012. Mother presented no evidence that P.J.V.C. acclimatized to life in the United States in the roughly five months that passed before Father filed his petition under the Hague Convention. The older child, S.H.V., lived in the United States for much of the first four years of his life, but then he was moved to Panama in 2006 and lived there until August 2012. Again, we see no record evidence that he acclimatized to life in the United States to such a strong degree, despite six years of residency in Panama, that he acquired a new habitual residence there.

We conclude the trial judge did not abuse her discretion by ruling that Panama was the children's habitual residence.

### 3. Affirmative defense

Mother also argues within her first issue that the trial judge erred by not denying Father's petition based on the "age and maturity" defense under the Hague Convention. She contends that she conclusively established this defense or, alternatively, that the judge's failure to rule in her favor on the defense was against the great weight of the evidence.

Under the Convention and the ICARA, a judge may refuse to order the return of a child if he or she finds by a preponderance of the evidence that the child objects to being returned and has attained an age and degree of maturity that make it appropriate to consider the child's views. *See* 42 U.S.C.A. § 11603(e)(2); Hague Convention art. 13, 19 I.L.M. at 1502; *In re S.J.O.B.G.*, 292 S.W.3d 764, 775–76 n.8 (Tex. App.—Beaumont 2009, no pet.). Even if a party establishes that a defense applies, the judge still retains the discretion to return the child to the country of

habitual residence if return would further the aims of the Convention. *See In re J.J.L.–P.*, 256 S.W.3d 363, 369 (Tex. App.—San Antonio 2008, no pet.); *Velez v. Mitsak*, 89 S.W.3d 73, 81 (Tex. App.—El Paso 2002, no pet.). Given the discretionary nature of the age-and-maturity defense, we conclude that an abuse-of-discretion standard of review applies to this issue. *Cf. In re J.G.*, 301 S.W.3d at 380–81 (applying abuse-of-discretion standard to habitual-residence determination). The sufficiency of the evidence is relevant to our determination of whether the trial judge abused her discretion. *In re K.L.W.*, 301 S.W.3d 423, 425 (Tex. App.—Dallas 2009 no pet.).

The evidence pertinent to the age-and-maturity defense consists largely of a translation of a Panamanian psychological report about S.H.V. based on an interview and examination performed in August 2012, about three weeks before his tenth birthday. The psychologist who prepared the report was generally quite positive about S.H.V.'s attitudes and behaviors observed during the evaluation, and the psychologist further opined that S.H.V. manifested "higher than average performance" with respect to growth, development, and maturation. But the psychologist did not further explain or quantify this conclusion. We note also that Mother adduced no evidence of the psychologist's education, training, or qualifications, which could have affected the weight assigned to the report by the trial judge. In sum, the report shows only that S.H.V. was a generally healthy and well-adjusted child whose "growth, development, and maturation" were "higher than average" for his age and grade level.

There is no bright-line test for when a child "has attained an age and degree of maturity at which it is appropriate to take account of [his or her] views." Hague Convention art. 13, 19 I.L.M. at 1502. "Given the fact-intensive and idiosyncratic nature of the inquiry, decisions applying the age and maturity exception are understandably disparate." *De Silva v. Pitts*, 481 F.3d 1279, 1287 (10th Cir. 2007). But several cases support the trial judge's decision. In one

case, a federal appellate court upheld a trial judge's determination that children aged thirteen and nine were not sufficiently mature for their views to be taken into account. *Dietz v. Dietz*, 349 F. App'x 930, 934–35 (5th Cir. 2009); *see also Tsai-Yi Yang*, 499 F.3d at 278–80 & n.20 (affirming rejection of defense in case involving "borderline genius" child who was ten at time of trial court's decision); *England*, 234 F.3d at 272–73 (reversing trial court and holding that thirteen-year-old with ADD and learning disabilities did not qualify for the defense). In this case, the only evidence on point was a single psychological report containing an opinion that S.H.V.'s maturity was higher than average for a boy of almost ten. Given that the defense is to be narrowly construed, we cannot say the trial judge abused her discretion to the extent she concluded that S.H.V. was not old enough and mature enough for his views to be taken into account under the age-and-maturity defense.

The other aspect of the age-and-maturity defense is that the child must object to being returned to his country of habitual residence. The August 2012 psychological report contains several passages that purport to be quotations of statements made by S.H.V. The pertinent ones follow:

> "I lived in Texas before. I was about 4 or 5, the last time I visited I was 9, my grandmother, grandparents, friends that live in Texas, I would like to go there, to live and return for vacations."

> "Now I live with my mom in Bocas, I like my mom, I want to stay with her, I have been with her a lot in my life, she talks to me about the plans, I am not going to think that I am going to Tranquilo Bay."

> "I can live in Tranquilo Bay, but it is not my most favorite part of the world where I want to live. My dad is calling on the phone at night, he [asks] me what we did during the day and those things, he talks to me about staying with him, he wants to live, to have a better life with him, he's in the jungle!, and there are only three children counting my brother."

> "In the United States, school is starting in one week. In Bocas I have gone to school, in grade, they don't teach much mathematics, science, and I want to learn more. There, there is more lack of mathematics, science."

"I would miss my dad, I think, but I can visit during my vacations or Christmas, then I could have time with my dad, half the time with my dad."

"There aren't many things to do here, stay at home, the pool, some days we ride bicycles, sometimes we go to the beach, but that's it."

Based on the psychological report, the trial judge could have properly concluded that S.H.V. did not object to return to Panama. A reasonable interpretation of the psychological report about S.H.V. is that he preferred the United States over Panama because he perceived the United States to offer better educational and social opportunities, but he did not find life in Panama intolerable or even unpleasant. Evidence that a child has a generalized desire to stay in one country rather than another does not compel the court to apply the age-and-maturity defense. *See, e.g.*, *Tsai-Yi Yang*, 499 F.3d at 279; *see also Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 206 (E.D.N.Y.) ("A child's expression of a preference to remain in the United States rather than a particularized objection to repatriation may provide a basis for a court to find the mature child exception inapplicable."), *aff'd*, 401 F. App'x 567 (2d Cir. 2010); *Gonzalez Locicero v. Nazor Lurashi*, 321 F. Supp. 2d 295, 298 (D.P.R. 2004) ("The fact that the child prefers to remain in Puerto Rico, because he has good grades, has friends and enjoys sport activities and outings, is not enough for this Court to disregard the narrowness of the age and maturity exception to the Convention's rule of mandatory return."). Given that the age-and-maturity defense is to be narrowly construed, we cannot say the trial judge abused her discretion to the extent she concluded that S.H.V. has not expressed an objection to being returned to Panama.

At the end of this section of her brief, Mother asserts that the trial judge also erred by failing to make express findings on the age-and-maturity defense. She cites no authority and provides no argument to support this assertion, so the point is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Moreover, Mother has not shown any harm from the absence of an express finding rejecting the defense. She and Father both adequately briefed the merits of the propriety

of the trial judge's implied rejection of the defense, and Mother does not contend or explain how the absence of an express finding hampered her ability to brief the issue. We reject Mother's contention. *See Hill v. Sargent*, 615 S.W.2d 300, 302 (Tex. Civ. App.—Dallas 1981, no writ) (holding that failure to make findings of fact was not reversible error).

For the foregoing reasons, we conclude that Mother's arguments concerning the age-and-maturity defense are without merit.

### 4. Mother's motions for interview and appointment of an ad litem

In her last argument within her first issue, Mother argues that the trial judge erred by ruling on Father's Hague Convention petition without first granting her motion for an in camera interview with the children and her motion for appointment of an attorney ad litem or a guardian ad litem. As previously noted, Mother filed these written motions with the trial court less than an hour before the hearing of Father's petition. The trial judge did not expressly rule on either motion.

We conclude Mother failed to preserve error with respect to the motion for appointment of an ad litem. To preserve error, a party must take proper action to make the trial judge aware of the complaint and obtain a ruling, either express or implied. TEX. R. APP. P. 33.1(a). Mother did not satisfy either step. The mere filing of a motion does not ordinarily give rise to an inference that the trial judge is actually aware of it. *AIS Servs., LLC v. Mendez*, No. 05-07-01224-CV, 2009 WL 2622391, at *2 (Tex. App.—Dallas Aug. 27, 2009, no pet.) (mem. op.). The reporter's record from the hearing shows no attempt by Mother to bring the motion to the trial judge's attention, and nothing in the record shows that the trial judge was aware of it. We conclude Mother did not adequately make the trial judge aware of her request. *See Unifund CCR Partners v. Smith*, No. 05-07-01449-CV, 2009 WL 2712385, at *2 (Tex. App.—Dallas Aug. 31, 2009, pet. dism'd) (mem. op.) ("To complain on appeal about the denial of the motion, the

–11–

movant is also required to bring the motion to the trial court's attention."). Because the record does not show that the trial judge was aware of the motion, it necessarily follows that we also cannot infer an implicit ruling on it. *See Mendez*, 2009 WL 2622391, at *2 ("An essential element of an implicit ruling is awareness by the trial judge of the request or motion that is supposedly being ruled on."). We conclude Mother failed to preserve error with respect to her motion for appointment of an ad litem.

With respect to Mother's motion for an in camera interview of the children, we note that Mother's counsel did mention her desire for the judge to interview the children in camera during the hearing. But she did not specifically mention her motion, she did not press the judge for a ruling on her request, and the judge made no express ruling. We conclude that Mother failed to preserve error as to this motion as well. *See* TEX. R. APP. P. 33.1(a). Moreover, Mother did not make an offer of proof as to what the children would have said in the interview, which means we cannot tell if any error was harmful. *See In re N.W.*, No. 02-12-00057-CV, 2013 WL 5302716, at *10 (Tex. App.—Fort Worth Sept. 19, 2013, no pet.) (mem. op.) (holding, in case under Texas Family Code, that party could not show denial of interview with child was harmful error without an offer of proof).

Even if we were to assume that the trial judge implicitly denied Mother's request for an in camera interview and were to overlook the absence of an offer of proof, we would conclude that the trial judge did not abuse her discretion. Mother filed her motion for the interview at the last minute, and she made no showing that she had made any arrangements for the interview (which presumably would have had to be by telephone, since the children were in Panama). In cases under the Texas Family Code, courts have held that a trial judge may deny a motion for an interview with a child if the request is untimely. *See id.* at *8–10; *In re J.G.M.*, No. 09-11-00368-CV, 2012 WL 1951119, at *3 (Tex. App.—Beaumont May 31, 2012, no pet.) (mem. op.).

–12–

Assuming Mother preserved error, the trial judge did not abuse her discretion by denying Mother's request for an interview with the children.

### 5. Conclusion

For the foregoing reasons, we reject all of Mother's arguments made in connection with her first issue on appeal. Her second issue on appeal, in which she challenges the awards of fees and expenses to Father, depends on the outcome of her first issue. Accordingly, we also resolve her second issue on appeal against her.

### B. "Possession" language in the final order

In her third and final issue on appeal, Mother argues that the trial judge erred by including certain provisions in the final order granting Father's petition. This is the sentence in question:

> IT IS ORDERED that Petitioner . . . shall maintain possession of the children in Panama and is not required to return the children to the United States until the written agreement of the parties or order of the Court in Panama.

Mother argues that this sentence purports to modify the custody arrangement in place in Panama. She complains that the trial judge had no jurisdiction to make an order affecting the custody of the children in Panama once the judge granted Father's petition and declined to order the return of the children to the United States. *See* 42 U.S.C.A. § 11601(b)(4) ("The Convention and [the ICARA] empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."); *In re A.S.C.H.*, 380 S.W.3d 346, 351 (Tex. App.—Dallas 2012, no pet.) ("[J]urisdiction under the [ICARA] is granted only as to the merits of the abduction claim; the statute does not grant jurisdiction to decide the merits of any underlying custody dispute."). Father argues that the sentence, read in context, does not purport to establish a possession order applicable in Panama or to alter the Panamanian orders, but he

states that he has no objection to a "clarifying statement" that the order does not modify the possession orders in effect in Panama.

We agree with Mother that the above-quoted sentence could reasonably be read to give Father full custody of the children in Panama, which would exceed the trial court's authority under the ICARA. We modify the order by changing the above-quoted sentence so that it provides only that Father is not required to return the children to the United States.

## III.   DISPOSITION

We modify the trial court's final order in this case by changing the sentence quoted in Part II.B *supra* to provide only that Father is not required to return the children to the United States. We affirm the order as modified.

/Kerry P. FitzGerald/

130864F.P05

KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF S.H.V. AND
P.J.V.C., CHILDREN,

No. 05-13-00864-CV

On Appeal from the 301st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-13-00307.
Opinion delivered by Justice FitzGerald.
Justices Francis and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the following sentence on page 3 of the judgment: "IT IS ORDERED that Petitioner, Jay Harrison Viola, shall maintain possession of the children in Panama and is not required to return the children to the United States until the written agreement of the parties or order of the Court in Panama." We replace it with the following sentence: "IT IS ORDERED that Petitioner, Jay Harrison Viola, is not required to return the children to the United States."

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Jay Harrison Viola recover his costs of this appeal from appellant Stephanie Lynn Viola Cole.

Judgment entered June 4, 2014

/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE

–15–