ELNESS SWENSON GRAHAM
ARCHITECTS, INC.,
Appellant

RLJ II–C Austin Air, LP; RLJ II–C Austin Air Lessee, LP; and RLJ Lodging Fund II Acquisitions, LLC, Cross–Appellants

v.

RLJ II–C AUSTIN AIR, LP; RLJ II–C Austin Air Lessee, LP; and RLJ Lodging Fund II Acquisitions, LLC, Appellees

Elness Swenson Graham Architects, Inc., Cross–Appellee

NO. 03–14–00738–CV

Court of Appeals of Texas, Austin.

Filed: May 3, 2017

Rehearing Overruled May 3, 2017

Rehearing En Banc Overruled May 3, 2017

Steven R. Baggett, Gregory N. Ziegler, Matthew R. Mum, Weston M. Davis, MacDonald Devin, PC, Dallas, TX for Appellant.

J. Stephen Gibson, Jessica Neufeld, Benton T. Wheatley, Tracy Lynn Paczkowsk McCreight, Munsch, Hardt, Kopf and Harr, Austin, TX, Michael W. Huddleston, Munsch Hardt Kopf & Harr PC, Dallas, TX for Appelee.

Before Chief Justice Rose, Justices Puryear, Pemberton, Goodwin, Field and Bourland;

## ON MOTION FOR RECONSIDERATION EN BANC

### OPINION

Cindy Olson Bourland, Justice

RLJ filed a motion for rehearing, motion for reconsideration en banc, and motion to redesignate our "Memorandum Opinion" as an "Opinion." We deny RLJ's motion for rehearing, grant in part and overrule in part RLJ's motion for reconsideration en banc, and grant RLJ's motion to redesignate our memorandum opinion as an opinion. We withdraw our earlier memorandum opinion and judgment dated January 20, 2017, and substitute the following opinion and judgment in their place.

Appellant Elness Swenson Graham Architects, Inc. (Elness) appeals from a final judgment in favor of appellees RLJ II–C Austin Air, LP; RLJ II–C Austin Air Lessee, LP; and RLJ Lodging Fund II Acquisitions, LLC (collectively, RLJ). RLJ also filed a cross-appeal against Elness. Elness raises five issues on appeal, challenging RLJ's right to bring suit for breach of contract, the trial court's admission of certain evidence and award of attorney's fees to RLJ, the propriety of the jury charge, and the sufficiency of the evidence to support RLJ's damages. RLJ raises two issues in its cross-appeal, contending that the trial court erred in applying settlement credits to the damages awarded to RLJ at trial and in failing to award attorney's fees to RLJ for its claims against two other defendants with which it

ultimately settled before the end of trial. We will reverse the trial court's final judgment and render judgment that RLJ take nothing.

## BACKGROUND

The record shows that this case arises from alleged defects in the design and construction of a hotel near the airport in Austin. RLJ, the owner of the hotel at the time that the alleged defects were discovered, filed suit against multiple defendants involved in the design and construction of the hotel, alleging that the defendants' work caused the hotel to have a defective foundation that caused building movement and further damage. RLJ had previously purchased the hotel from White Lodging Services Corporation (White Lodging),[1] which had previously entered into contracts with the defendants for development of the hotel. In the trial court's pre-trial ruling on cross-motions for summary judgment on the issue of RLJ's capacity to bring suit as an assignee of the contract between White Lodging and Elness, the trial court concluded that RLJ had capacity to bring suit.

Based on other pre-trial rulings by the trial court and non-suits filed by RLJ, RLJ's only remaining claims as trial neared were breach-of-contract claims against three defendants: Elness, an architectural firm; EBCO General Contractor, Ltd., and EBCO/Warrior Management, LLC (collectively, EBCO), a general contractor; and Terracon Consultants, Inc. (Terracon), a geotechnical engineering firm. RLJ then entered into a settlement agreement with Terracon before trial and a settlement agreement with EBCO dur-

---

1. The purchase agreement listed Whiteco Industries as the seller and White Lodging as the manager and agent of Whiteco Industries. However, based on the parties' briefs and the issues on appeal, we need not address Whiteco Industries' involvement in the case and instead refer, as do the parties, to White Lodging as the initial owner and developer of the hotel.

ing trial. The only defendant remaining when the case was submitted to the jury was Elness.

At the close of trial, the jury found that Elness had "fail[ed] to comply with the [contract between Elness and White Lodging] regarding the structural engineering services required by the contract" and awarded RLJ $785,000 in damages. Elness then filed a motion asking the trial court to apply settlement credits to the damage amount based on the payments RLJ received from its settlements with Terracon and EBCO. The trial court granted Elness's motion. The parties agreed to submit the issue of attorney's fees to the trial court, and RLJ submitted evidence of its attorney's fees in the amount of $1,388,019 for its claims against Elness, EBCO, and Terracon. In the alternative, RLJ requested its fees against Elness only, which it alleged were $920,847. The trial court ultimately awarded RLJ fees in the amount of $901,650.96 for RLJ's suit against Elness only. In its final judgment, the trial court applied the settlement credits (a total of $1,170,000) to the amounts awarded in damages and attorney's fees and ordered that RLJ recover the remaining amount, which was $516,650.96. Both parties appeal from the trial court's judgment.

## DISCUSSION

Elness raises several issues on appeal, and RLJ raises two issues as well as several sub-issues on cross-appeal. We will address these issues in their logical order, which will sometimes require us to turn to an issue on cross-appeal before returning to an issue on appeal.

### RLJ's Capacity to Bring Suit

#### A. Background

■ Elness and White Lodging entered into a contract (the hotel contract) in March 2005 in which Elness agreed to provide architectural services for the development of the hotel. The hotel contract contained an anti-assignment provision stating that neither party could assign the contract to another entity without the written consent of the other party. In September 2005, with Elness's consent, White Lodging assigned the hotel contract to a company called South Ausaircourt (Ausaircourt). In March 2016, RLJ entered into a purchase and sales agreement with several sellers, including Ausaircourt, Whiteco Industries, and White Lodging, who served as the manager and agent for Whiteco Industries.

In December 2007, the parties closed on the sale of the hotel. On the same date as the closing, RLJ and Ausaircourt executed an "Assignment and Assumption of Licenses, Permits and Intangibles" (the Assignment). The Assignment assigned Ausaircourt's "interest" in the hotel to RLJ and further stated that "[Ausaircourt] hereby sells, transfers, conveys and assigns to [RLJ] all of [Ausaircourt's] right, title, and interest in and to all licenses, permits and all other intangible assets relating to the [hotel] (collectively, 'Licenses'), subject, however, to the terms and covenants of the Licenses and this Assignment." At some point after RLJ took possession of the hotel, it noticed alleged problems in the hotel's foundation and eventually filed suit against Elness and other defendants.

After RLJ filed suit, Elness filed traditional and no-evidence summary-judgment motions arguing, among other things, that RLJ had not been validly assigned the hotel contract or a cause of action for breach of the hotel contract and thus could not bring a breach-of-contract suit against Elness. RLJ filed its own partial summary-judgment motion in which it contended that the hotel contract and all causes of action arising from it had been assigned to it in the Assignment. The trial

court denied Elness's motions and granted RLJ's motion.

## B. Standard of Review

■ To prevail on a traditional motion for summary judgment, the movant must show that "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law[.]" Tex. R. Civ. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). To prevail on a no-evidence motion for summary judgment, the movant must first allege that there is no evidence of one or more specified elements of a claim or defense on which the nonmovant would have the burden of proof at trial. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see* Tex. R. Civ. P. 166a(i). A nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents evidence that raises a genuine issue of material fact regarding the elements challenged by the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). When we review cross-motions for summary judgment, we consider both motions de novo and render the judgment that the trial court should have rendered. *See Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## C. Analysis

■ Elness contends that the trial court erred in determining that RLJ had capacity to bring suit for breach of the hotel contract because, Elness argues, the Assignment did not assign causes of actions under the hotel contract to RLJ. Both the trial court and the parties at times referred to this issue as a challenge to RLJ's

standing rather than its capacity, but all of the arguments made by Elness in the summary-judgment proceedings and on appeal with respect to this issue challenge only RLJ's privity of contract with Elness, which is a challenge to capacity, not standing.[2] *See Schlein v. Griffin*, No. 01-14-00799-CV, 2016 WL 1456193, at *5 (Tex. App.–Houston [1st Dist.] Apr. 12, 2016, pet. denied) (mem. op.); *Highland Credit Opportunities CDP, L.P. v. UBS AG*, 451 S.W.3d 508, 516 (Tex. App.–Dallas 2014, no pet.); *see also MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651–52, 654 (Tex. 1999) (concluding that entity was neither party nor third-party beneficiary entitled to sue on contract and reversing and rendering take-nothing judgment on merits of contract claim rather than dismissing for lack of jurisdiction); *Ganter Grp., L.L.C. v. Choice Health Servs., Inc.*, No. 11-12-00297-CV, 2014 WL 5562945, at *2 (Tex. App.–Eastland Oct. 31, 2014, no pet.) (mem. op.) ("[A] privity-of-contract argument goes to capacity, which does not implicate jurisdiction."). Privity is established by proof that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff. *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 284–85 (Tex. App.–Houston [1st Dist.] 2013, no pet.); *OAIC Commercial Assets, L.L.C. v. Stonegate Vill. L.P.*, 234 S.W.3d 726, 738 (Tex. App.–Dallas 2007, pet. denied). RLJ asserts that it had the right to bring a cause of action against Elness because it received the right by assignment.

■ To recover on an assigned cause of action, the party claiming the assignment occurred must show the existence of a cause of action capable of being assigned

---

**2.** We also note that in its answer to RLJ's petition, Elness filed a verified denial of RLJ's capacity to file suit based on an alleged lack

of a valid assignment, which is a requirement in order to challenge a plaintiff's capacity to bring suit. *See* Tex. R. Civ. P. 93(1), (2).

and that the cause of action was in fact assigned to that party. *See Pain Control Inst., Inc. v. GEICO Gen. Ins. Co.*, 447 S.W.3d 893, 897 (Tex. App.–Dallas 2014, no pet.); *Capital One, N.A. v. Nationstar Mortg. LLC*, No. 14-10-00733-CV, 2011 WL 3332145, at *3 (Tex. App.–Houston [14th Dist.] Aug. 4, 2011, no pet.) (mem. op.); *Texas Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 217 (Tex. App.–Fort Worth 1994, writ denied).

 Absent specific circumstances not present in this case, causes of action in Texas are freely assignable. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 106 (Tex. 2004); *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 705–07 (Tex. 1996); *Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W.3d 627, 633 (Tex. App.–Dallas 2000, pet. denied). "As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 & n.11 (Tex. 2004); *see also* Restatement (Second) of Contracts § 317(2)(b) (1981) ("A contractual right can be assigned unless ... the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy.").

 In construing a written assignment, an appellate court applies the rules of interpretation and construction applicable to contracts. *Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 832–33 (Tex. App.–Fort Worth 2006, no pet.); *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 58 (Tex. App.–San Antonio 2005, pet. denied). A court's primary goal is to ascertain the intent of the parties as it is expressed in the written assignment. *See Commercial Structures*, 192 S.W.3d at 832. When an appellate court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the appellate court is obligated to interpret the contract as a matter of law. *Id.* Further, unless the agreement shows the parties used a term in a technical or different sense, the terms are given their plain, ordinary, and generally accepted meaning. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Neither party contends that the language used in the Assignment is ambiguous.

The portion of the Assignment that RLJ relies on in asserting that Ausaircourt assigned causes of actions arising from the contract to RLJ states:

Assignment of Licenses, Permits and Intangibles

[Ausaircourt] hereby sells, transfers, conveys and assigns to [RLJ] all of [Ausaircourt's] right, title and interest in and to all licenses, permits and all other intangible assets relating to the Property (collectively, "Licenses"), subject, however, to the terms and covenants of the Licenses and this Assignment.

RLJ contends that the phrase "all other intangible assets relating to the Property" includes causes of actions arising from the contract. In interpreting the meaning of the term "intangible assets," we first note that neither the term nor each individual word within the term is defined in the Assignment. Thus, we look to the plain, ordinary, and generally accepted meaning of the words. *See id.* "Intangible property" is defined as "property having no physical substance apparent to the senses: incorporeal property (as *choses in action*) often evidenced by documents (as stocks, bonds, notes, judgments, franchises) having no intrinsic value or by rights of action, easements, goodwill, trade secrets." *See Webster's Third New Int'l Dictionary* 1173 (2002) (emphasis added). A "chose in action" is defined as "the right to bring an

action to recover a debt, money, or thing" or "any right to a personal as opposed to a real thing that is not in one's possession or actual enjoyment but is recoverable by suit at law; esp: any right to an act or forebearance (as in case of debts, stocks, shares, and negotiable instruments or claim of reparation for a tort)." *See Black's Law Dictionary* 275 (9th ed. 2009); *Webster's* at 399. The Texas Supreme Court has also noted that it has used the terms "claim," "cause of action," and "chose in action" interchangeably "to refer to the facts giving rise to a right that is enforceable in [a lawsuit]." *See Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 565 (Tex. 2014) (citing *Gandy*, 925 S.W.2d at 698–708).

In addition to *Webster's*, case law also indicates that choses in action are intangible property. *See In re Marriage of Malacara*, 223 S.W.3d 600, 603 (Tex. App.–Amarillo 2007, no pet.) (stating that "choses-in-action or contract rights" are types of "intangible property"); *Adams v. Great Am. Lloyd's Ins. Co.*, 891 S.W.2d 769, 772 (Tex. App.–Austin 1995, no writ) (noting that a Texas court "ha[d] indicated that a chose in action is an *intangible* property right"); *see also American Multi–Cinema v. Hegar*, No. 03-14-00397-CV, 2017 WL 74416, at *6 (Tex. App.–Austin Jan. 6, 2017, no pet. h.) (mem. op.) (using *Webster's Dictionary* definition of "intangible property" in defining the "common and ordinary meaning" of the term). Because a chose in action is included in the definition of "intangible property," we conclude that the assignment of "all of [Ausaircourt's] right, title and interest in and to . . . all other intangible assets relating to the Property" included an assignment of causes of action arising from the hotel contract. *See Webster's* at 1173; *In re Malacara*, 223 S.W.3d at 603; *Adams*, 891 S.W.2d at 772; *Hegar*, 2017 WL 74416, at *6.

Elness argues that the assignment of "intangible assets" here was still not sufficient to assign causes of action because "[a] subsequent owner who did not own the property at the time of the injury may only bring suit where the subsequent owner receives an express assignment of the cause of action," and the provision assigning "intangible assets" was not an express assignment. In support of its argument, Elness cites to a line of cases that require an express assignment for a claim for damages under certain circumstances. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 424 (Tex. 2010); *Richey v. Stop N Go Mkts. of Tex.*, 654 S.W.2d 430, 432 (Tex. 1983); *Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561, 562–63 (1936); *La Teirra de Simmons Familia, Ltd. v. Main Event Entm't, L.P.*, No. 03-10-00503-CV, 2012 WL 753184, at *16 (Tex. App.–Austin Mar. 9, 2012, pet. denied) (mem. op.); *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 767 (Tex. App.–El Paso 2010, no pet.); *Brooks v. Chevron USA Inc.*, No. 13-05-00029-CV, 2006 WL 1431227, at *7 (Tex. App.–Corpus Christi May 25, 2006, pet. denied) (mem. op.); *Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 724 (Tex. App.–San Antonio 2004, no pet.); *Cook v. Exxon Corp.*, 145 S.W.3d 776, 781 (Tex. App.–Texarkana 2004, no pet.); *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex. App.–Tyler 2002, pet. denied); *Senn v. Texaco, Inc.*, 55 S.W.3d 222, 226 (Tex. App.–Eastland 2001, pet. denied); *Indigo Oil, Inc. v. Wiser Oil Co.*, No. 05-96-00984-CV, 1998 WL 839591, at *32 (Tex. App.–Dallas Dec. 7, 1998, pet. denied) (not designated for publication); *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.).

■ In a letter from the trial court to the parties explaining the trial court's deci-

sion on this issue, the trial court stated that all of the cases cited by Elness were distinguishable from this case. We agree. The cases cited by Elness address injury to land or property and the issue of whether a previous owner or current owner of the property had standing to pursue a cause of action arising from the injury. In all of the cases, there was no assignment at all, much less an express assignment. In several of the cases where property had been sold, the courts concluded that a mere transfer of the land by deed did not assign or otherwise transfer a claim for damages to the land. *See Vann*, 90 S.W.2d at 563; *Brooks*, 2006 WL 1431227, at *7; *Cook*, 145 S.W.3d at 785–86; *Pluff*, 94 S.W.3d at 27–28; *Senn*, 55 S.W.3d at 225, 226. All of the cases but two do not in any way address a cause of action arising from a contract between the parties, as is present here. The first case that involved a breach-of-contract claim was about a lessee's alleged breach of a lease and whether a subsequent lessor could recover damages for the breach, but there was no assignment clause involved in that case. *See Richey*, 654 S.W.2d at 432. The second case addressed whether a subsequent own-

er of property could sue an oil company for an injury that occurred to the property before the owner purchased it, and again, there was no assignment clause in the case. *See Cook*, 145 S.W.3d at 785. Because the cases cited by Elness are distinguishable from the circumstances of this case, and because causes of action are freely assignable, we reject Elness's contention that the assignment of Ausaircourt's causes of action to RLJ was required to be express. *See PPG Indus.*, 146 S.W.3d at 106; *Gandy*, 925 S.W.2d at 705–07. Given that the evidence shows as a matter of law that the Assignment in this case included an assignment of causes of action arising from the hotel contract, we conclude that the trial court did not err in granting RLJ's motion for partial summary judgment and denying Elness's traditional and no-evidence motions for summary judgment on this issue.[3] Accordingly, we overrule this issue.

### Admission of Hotel Contract

 Elness also contends that the trial court erred in admitting the hotel contract into evidence over Elness's objections. Elness contends that the trial court

---

**3.** Elness also raises an argument that an anti-assignment clause in the hotel contract prohibited an assignment of the contract itself (as opposed to a cause of action under the contract) but acknowledges that "assignment of the contract itself is irrelevant to assignment of the ... cause of action," and raises the issue "in an abundance of caution" due to certain statements made by the trial court. Because we hold that RLJ showed as a matter of law that Ausaircourt assigned it a cause of action for breach of the hotel contract, we need not address the issue of whether an anti-assignment clause in the hotel contract prohibited an assignment of the contract under the facts of this case. Whether Ausaircourt validly assigned the contract itself does not affect our conclusion regarding the assignment of a cause of action under the contract because Texas law distinguishes between a contracting party's ability to assign rights un-

der a contract containing an anti-assignment clause and that same party's ability to assign causes of action arising from the breach of that contract. *See* Tex. Bus. & Com. Code § 2.210(d); *Dearborn Stove Co. v. Caples*, 149 Tex. 563, 236 S.W.2d 486, 490 (1951); *City of Brownsville ex. rel. Pub. Utils. Bd. v. AEP Tex. Cent. Co.*, 348 S.W.3d 348, 358 (Tex. App.–Dallas 2011, no pet.); *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211–12 (Tex. App.–El Paso 2010, pet. denied); *Lindsay ex. rel. Lindsay v. South San Antonio Indep. Sch. Dist.*, 983 S.W.2d 778, 779–80 (Tex. App.–San Antonio 1998, no pet.). The clause in this case does not prohibit the assignment of causes of action arising from the contract, and Ausaircourt therefore had a common-law right to assign its cause of action for breach of the contract. *See City of Brownsville*, 348 S.W.3d at 358; *Pagosa Oil*, 323 S.W.3d at 212.

should not have admitted the contract because the contract was inadmissible hearsay and was not properly authenticated. We review the admission or exclusion of evidence under an abuse-of-discretion standard. *Southwestern Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 721 (Tex. 2016); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *ICON Benefit Adm'rs II, L.P. v. Abbott*, 409 S.W.3d 897, 906 (Tex. App.–Austin 2013, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Even if an appellant establishes error, appellate courts reverse a judgment based on an erroneous evidentiary ruling only if the error probably resulted in an improper judgment. Tex. R. App. P. 44.1; *Owens–Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

In arguing that the hotel contract is inadmissible hearsay, Elness points out that the witness who testified about the contract was an employee of RLJ and was therefore not a party to the contract and did not have personal knowledge of the terms of the contract. Elness further argues that RLJ failed to establish an exception to the hearsay rule. However, a signed instrument, such as a contract, that creates legal rights is not hearsay because it has legal effect independent of the truth of any statement contained in it. *See Kepner–Tregoe, Inc. v. Leadership Software Inc.*, 12 F.3d 527, 539–40 (5th Cir. 1994); *Sanders v. Worthington*, 382 S.W.2d 910, 915–16 (Tex. 1964); *Rogers v. RREF II CB Acquisitions, LLC*, —— S.W.3d ——, ——, No. 13-15-00321-CV, 2016 WL 6804451, at *10 (Tex. App.–Corpus Christi, Nov. 17, 2016, no pet.); *Humphrey v. Yancey & Nationwide Slate*, No. 05-15-00653-CV, 2016 WL 3568042, at *5 (Tex. App.–Dallas June 30, 2016, pet. denied) (mem. op.);

*Rockwall Commons Assocs. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 511 (Tex. App.–El Paso 2010, no pet.); *Reeves v. Memorial Terrace, Ltd.*, No. 14-02-00633-CV, 2004 WL 2933807, at *3 (Tex. App.–Houston [14th Dist.] Dec. 21, 2004, pet. denied) (mem. op.). Because the hotel contract was not inadmissible hearsay, the trial court did not abuse its discretion in overruling Elness's hearsay objection.

With respect to Elness's objection based on a lack of proper authentication of the hotel contract, we also conclude that the trial court did not err in overruling the objection. The witness testified that he was the senior vice-president for design and construction at RLJ. He further testified that his job required him "to review [contracts], to understand them and to execute and administrate them." He testified that the types of contracts he worked with included "design contracts, construction contracts, project management contracts, [and] construction management contracts." He further testified that he had been employed by RLJ for the past ten years and was employed there when RLJ purchased the hotel in this case. He testified that it was part of his job to receive all paperwork with regard to the design and construction of the hotel in this case and that he received "plans, specifications, [and] contracts" from White Lodging at the time of purchase. In addition, he testified that the specific contracts he received when RLJ bought the hotel were "the contract for design services and the contract for construction management services." Later in his testimony, counsel for RLJ handed the witness both purported contracts and asked him to identify them. The witness testified that the exhibit at issue, Exhibit 15, was the agreement between Elness and RLJ regarding the hotel, and that the other exhibit, Exhibit 48, was a construc-

tion-management agreement between EBCO and RLJ for the hotel.[4] He testified that he was the custodian of records for RLJ and that he received the contracts at the time of the purchase of the hotel.

 Authenticity is a condition precedent to an exhibit's admissibility. *See* Tex. R. Evid. 901. Evidence sufficient to support a finding that the matter in question is what its proponent claims satisfies this requirement. *See id.* R. 901(a). Here, RLJ has consistently claimed that Exhibit 15 is the contract that is the basis of this suit, which is the contract between the owner of the hotel (White Lodging at the time of the agreement) and Elness. Thus, the witness's testimony that Exhibit 15 portrays what RLJ claims it portrays was sufficient to satisfy the authentication requirement of Rule 901(a). *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *In re J.A.S.*, No. 11-09-00176-CV, 2011 WL 704390, at *3 (Tex. App.–Eastland Jan. 13, 2011, no pet.) (mem. op.); *Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 508–09 (Tex. App.–Austin 2007, no pet.).

We further note that Elness does not dispute that the hotel contract is the contract at issue in this case and that the contract was entered into between White Lodging, the hotel owner at the time of the agreement, and Elness, the architect for the hotel. In fact, a Bates stamp on Exhibit 15 indicates that the document itself was produced by Elness during discovery. *See* Tex. R. Civ. P. 193.7. Moreover, RLJ elicited further testimony without objection

from two experts—a structural geotechnical engineer and an architect—in which the experts also testified that Exhibit 15 portrayed what RLJ claims it portrayed. Specifically, the engineer testified without objection that Exhibit 15 was "the [American Institute of Architects] contract between owner and architect." The architect also testified without objection that Exhibit 15 was "the agreement between the owner and the architect. It is based on the American Institute of Architects form ... This appears to be the agreement between the owner and the architect for the architect's services to design this project."

Because we conclude that the trial court did not abuse its discretion in overruling Elness's objections to the hotel contract, we overrule Elness's third issue.

### Jury Charge

 Elness also asserts that the trial court erred in overruling its objection to one of the liability questions in the jury charge. We review complaints of error in the jury charge under an abuse-of-discretion standard. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000); *Niemeyer v. Tana Oil & Gas Corp.*, 39 S.W.3d 380, 387 (Tex. App.–Austin 2001, pet. denied). To reverse a judgment based on a claimed error in the jury charge, a party also must show that the error probably resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Union Pac. R.R. Co. v.*

---

4. The witness testified as though RLJ were a party to both contracts, but the record shows that the exhibit at issue is an agreement between Elness and White Lodging, not Elness and RLJ, and that the other exhibit is an agreement between Elness and EBCO, not Elness and RLJ. As we stated above, White Lodging originally owned the hotel, and RLJ owned it at the time of trial. Read in context, the witness seems to have misspoken when he stated RLJ was a party to the contracts rather than White Lodging and EBCO. However, we need not address how the witness's misstatements affected the authentication of the contract because Elness does not raise the issue on appeal and because all of the other circumstances surrounding the contract establish that the contract was properly admitted into evidence in this case.

*Williams*, 85 S.W.3d 162, 166 (Tex. 2002); *Niemeyer*, 39 S.W.3d at 387.

The portion of the jury charge of which Elness complains is a question asking the jury the following: "Did [Elness] fail to comply with the [hotel contract] regarding the structural engineering services required by the contract?" At the charge conference, Elness objected to the question on the basis that "there is no evidence to support ... the failure to comply with the [hotel contract] regarding structural engineering services." The trial court overruled the objection, and upon consideration of the issue, the jury answered the question in the affirmative.

On appeal, Elness contends that the trial court erred in submitting the jury question because the hotel contract stated only that Elness's services would "include" structural-engineering services and did not provide a warranty or guarantee regarding the quality of the services. Elness further contends that the question was erroneously submitted because "RLJ did not plead or prove any theory of respondeat superior or vicarious liability against [Elness] for [the structural-engineering company's] structural engineering services."

To preserve error for appeal, the argument made in the trial court must comport with the argument made on appeal. *See Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985); *Davis v. Campbell*, 572 S.W.2d 660, 663 (Tex. 1978); *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 611–12 (Tex. App.–Houston [14th Dist.] 2015, pet. denied); *Smith v. East*, 411 S.W.3d 519, 530 (Tex. App.–Austin 2013, pet. denied); *Cunningham v. Hughes & Luce, L.L.P.*, 312 S.W.3d 62, 71 (Tex. App.–El Paso 2010, no pet.). This is so because "[p]reservation of error reflects important prudential considerations recognizing that the judicial process benefits greatly when trial courts have the opportunity to first consider and rule on error. Affording courts this opportunity conserves judicial resources and promotes fairness by ensuring that a party does not neglect a complaint at trial and raise it for the first time on appeal." *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014). Thus, it is well established that a party must preserve error by invoking a procedure in the trial court that apprises the trial court of the party's argument in a way that allows the trial court to decide the issue. *See* Tex. R. App. P. 33.1(a) (preservation requires either ruling or refusal to rule); *Burbage*, 447 S.W.3d at 257 ("[T]he objection must apprise the trial court of the error alleged such that the court has the opportunity to correct the problem."); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829 (Tex. 2012) (preservation inquiry focuses on trial court's awareness of and opportunity to remedy problem); *Arkoma Basin Expl. Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008) ("The cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it."); *In re S.H.V.*, 434 S.W.3d 792, 801 (Tex. App.–Dallas 2014, no pet.) (party must both "take proper action to make the trial judge aware of the complaint and obtain a ruling, either express or implied"); *Smith*, 411 S.W.3d at 530 (objections must be specific enough to enable trial court to understand precise nature of error alleged, and party must obtain ruling).

Here, Elness's argument on appeal does not comport with the objection it raised at trial. An objection that RLJ presented no evidence to show that Elness failed to comply with the structural-engineering services referenced in the hotel contract is an entirely different argument than one asserting that Elness was not required to provide structural-engineering services

that were free from defects and that RLJ was required to plead and prove a theory of respondeat superior or vicarious liability in order to hold Elness responsible for faulty structural-engineering services. Because Elness did not raise the argument in the trial court that it now raises on appeal, it has not preserved this issue for our review. *See* Tex. R. Civ. P. 272, 274; *Burbage*, 447 S.W.3d at 257; *Smith*, 411 S.W.3d at 530. We therefore overrule this issue.

### Damages Award

 Elness also contends that the evidence presented at trial is legally insufficient to support the jury's award of damages compensating RLJ for the impaired value of the hotel in the amount of $700,000. In conducting a legal-sufficiency review, we review the evidence presented in the trial court in a light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We set aside the verdict only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review. *See City of Keller*, 168 S.W.3d at 827. If more than a scintilla of evidence exists to support the finding, the legal-sufficiency challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). The evidence is legally insufficient only if (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *See City of Keller*, 168 S.W.3d at

810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

 Under a legal-sufficiency analysis, an expert's opinion may constitute no more than a mere scintilla of evidence if the opinion is not reliable under the same standards that govern admissibility, is speculative or conclusory on its face, or assumes facts contrary to the undisputed facts. *See Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) (considering legal-sufficiency challenge to expert opinion because opinion was alleged to be "conclusory or speculative and therefore non-probative on its face"); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997) (considering legal-sufficiency challenge regarding expert opinion under applicable reliability standards for Rule 702 admissibility); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499–500 (Tex. 1995) ("When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment.").

In this case, the question submitted to the jury regarding damages stated the following:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [RLJ] for its damages, if any, that resulted from [Elness's] failure to comply with the [hotel contract] that you found in answer to [the questions about Elness's liability]?
>
> . . . .
>
> Consider only the following elements of damages, if any, and none other. Answer separately in dollars and cents for damages, if any:
>
> (a) The difference, if any between the value of the hotel as constructed and the value of the hotel had [Elness] complied with

the [hotel contract]. The difference in value, if any, shall be determined as of August 31, 2010.

(b) The reasonable and necessary cost, if any, for barrier remediation that you find is due to [Elness's] failure to comply.

(c) The reasonable and necessary cost of repairs to the hotel, if any, made through August 31, 2010 that you find is due to [Elness's] failure to comply.

Elness's legal-sufficiency challenge pertains only to the jury's answer to subsection (a). All of Elness's arguments regarding this issue focus on the propriety of the expert's testimony and report and his opinion about the reduction in the *market value* of the hotel based on the alleged errors committed by Elness. However, subsection (a) does not ask about differences in market value. In fact, market value is not defined or mentioned at any point in the jury charge. Rather, subsection (a) asks for the difference between the value of the allegedly defectively built hotel and the value of the hotel if it had been constructed properly as set out in the hotel contract. This is a question asking for an amount of benefit-of-the-bargain damages. *See Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex. 1992) ( "The 'benefit of the bargain' measure, which utilizes an expectancy theory, evaluates the difference between the value as represented and the value actually received."); *Sacks v. Hall*, 481 S.W.3d 238, 246 (Tex. App.–Houston [1st Dist.] 2015, pet. denied) ("Benefit-of-the-bargain damages measure the difference between the value as represented and the value as received."); *Bechtel Corp. v. CITGO Prods. Pipeline Co.*, 271 S.W.3d 898, 927 (Tex. App.–Austin 2008, no pet.) ("[B]enefit of the bargain damages ... serve to protect the promisee's 'expecta-tion interest,' or his interest in having the benefit of his bargain by being put in as good a position as he would have been had the contract or promise been performed."); *Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment*, PJC 115.4 (2012).

■■■ Here, Elness did not object in the trial court to the language of subsection (a), propose different language, or request an instruction related to market value. It objected only on the basis that the evidence was legally and factually insufficient to support the request for damages. Where a party does not complain that the jury charge's measure of damages was improper or provide a proper measure of damages, we measure the sufficiency of the evidence for damages based on the language in the jury charge that was given. *See Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Faucette v. Chantos*, 322 S.W.3d 901, 912 (Tex. App.–Houston 14th Dist. 2010, no pet.).

Based on the language that was provided in the jury charge, the record contains evidence other than the expert's testimony that is legally sufficient to support the jury's damages award. Specifically, the trial court admitted an exhibit presented by RLJ that included more than one-thousand pages of invoices as well as a summary of the invoices and amounts that showed that RLJ paid more than $1 million after August 31, 2010, to fix the problems associated with the allegedly defective construction and design of the hotel. Two of RLJ's witnesses testified about the exhibit. The first witness, RLJ's senior vice-president for design and construction, testified that the exhibit included invoices for problems

to the hotel, such as plumbing leaks, concrete removal, and flooring, drywall, pool, carpeting, and sub-floor issues. He testified that none of the costs associated with the repairs were "typical costs" that RLJ would normally experience with its hotels. The second witness, a construction project manager, also testified about the repair work that had to be done to the hotel due to problems with the hotel's foundation. Among other work done, he testified that the work also included "barrier remediation." He testified that he believed that all of the repairs done to fix the damage done by movement of the hotel due to the faulty foundation were reasonable and necessary.

As stated above, the jury identified the amount of $700,000 as the difference between the value of the hotel as constructed and the value of the hotel had Elness complied with the hotel contract. Also as stated above, the total amount of work done to the hotel after August 31, 2010 (the date the jury was instructed to use to determine its answer) because of problems caused by the allegedly defective foundation was identified in the exhibit as more than $1 million dollars. Thus, the jury had sufficient evidence from which to determine benefit-of-the-bargain damages.[5] *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998) (party sought benefit-of-the-bargain damages based on costs expended to repair building due to defects); *Gary Pools, Inc. v. McCaffety*, No. 03-99-00390-CV, 2000 WL 298279, at *4 (Tex. App.–Austin Mar. 23, 2000, pet. denied) (mem. op.) (under benefit-of-bargain measure of damages, "[t]he cost of repair, added to the existing value, can result in the bargained-for value and thus compensate the injured party."). The jury has discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for the jury's calculation. *Swank v. Sverdlin*, 121 S.W.3d 785, 799 (Tex. App.–Houston [1st Dist.] 2003, pet. denied); *Mayberry v. Texas Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.–Austin 1997, writ denied). Given the language used in the jury charge and the evidence in the record, we conclude that the evidence is legally sufficient to support the jury's damages award under subsection (a) above. *See City of Keller*, 168 S.W.3d at 810; *King Ranch*, 118 S.W.3d at 751. Accordingly, we overrule this issue.

### Issue on Cross–Appeal: One–Satisfaction Rule

In its first issue on cross-appeal, RLJ contends that the trial court erred in applying the one-satisfaction rule to the jury award and therefore reducing the damages awards by the amounts RLJ received in its settlements with Terracon, the geotechnical engineer, and EBCO, the general contractor. The one-satisfaction rule is "the longstanding proposition that a plaintiff should not be compensated twice for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7

---

5. As set forth above, the jury assigned the amount of $70,000 under subsection (b) of the damages question as the reasonable and necessary cost for barrier remediation due to Elness's failure to comply with the hotel contract and $15,000 under subsection (c) as the reasonable and necessary cost of repairs to the hotel made through August 31, 2010 due to Elness's failure to comply with the hotel contract. The question at issue referred only to benefit-of-the-bargain damages as of August 31, 2010. Although Elness does not challenge the jury's answers to subsections (b) and (c), we note that the same exhibit that showed the cost of work done to the hotel due to Elness's failure to comply with the hotel contract supported the jury's answers to all of the subsections because the invoices totaled more than one-million dollars. Further, we need not address whether the use of August 31, 2010, as a valuation date was proper, as Elness did not object to the use of this date in the jury charge and did not request a different date.

(Tex. 1991); *Galle, Inc. v. Pool*, 262 S.W.3d 564, 573 (Tex. App.–Austin 2008, pet. denied). "The rationale for this doctrine is that the plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed. The plaintiff would otherwise be recovering an amount greater than the trier of fact has determined would fully compensate for the injury." *First Title Co. v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993); *Galle*, 262 S.W.3d at 573. The one-satisfaction rule applies both when several defendants commit the same act and when multiple defendants commit technically different acts that result in the same, single injury. *Stewart Title*, 822 S.W.2d at 7; *Galle*, 262 S.W.3d at 573. The application of the rule is not limited to tort claims, and whether the rule may be applied depends not on the cause of action asserted but rather on the injury sustained. *Galle*, 262 S.W.3d at 573. Thus, if the plaintiff has suffered only one injury, even if based on "overlapping and varied theories of liability," the plaintiff may recover only once. *Id.* The fact that more than one defendant may have caused the injury or that there may be more than one theory of liability does not modify this rule. *See Stewart Title*, 822 S.W.2d at 8; *Galle*, 262 S.W.3d at 573–74. We review the trial court's application of the one-satisfaction rule de novo. *See Galle*, 262 S.W.3d at 570 n.3.

The party seeking a settlement credit has the burden to prove its right to such a credit. *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998); *see Galle*, 262 S.W.3d at 570, 572. The party must prove the settlement amount by introducing into the record either the settlement agreement or some other evidence of the settlement amount. *Ellender*, 968 S.W.2d at 927; *Galle*, 262 S.W.3d at 572. If the nonsettling party meets this burden, the burden shifts to the plaintiff—the party in a better position to prove the proper allocation of the settlement—to show the extent to which the settlement amounts were allocated to separate damages caused by the settling defendants as opposed to joint or common damages. *Galle*, 262 S.W.3d at 572 (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 391–92 (Tex. 2000); *Ellender*, 968 S.W.2d at 928–29). If the plaintiff fails to satisfy this burden, then the nonsettling party is entitled to a credit equaling the entire settlement amount. *See Ellender*, 968 S.W.2d at 928; *Galle*, 262 S.W.3d at 574.

Here, RLJ asserted in its petition several claims against Elness and the settling defendants, including breach-of-contract claims against all three defendants, a claim for declaratory relief against Terracon, a breach-of-warranty claim against EBCO, claims for equitable subrogation against all three defendants, and a tort claim for breach of fiduciary duty against EBCO. RLJ pled generally as to all defendants in its request for damages as follows:

> As a result of the breaches of contract, breach of fiduciary duties, breach of warranty, tort/negligence breaches, and negligent acts alleged above, Plaintiffs have sustained damages in excess of the minimal jurisdictional requirements of this court. The appropriate measure of damages for the breach of contract and breach of warranty claims is the difference in value between the building as constructed and the value of the building had it been designed and constructed pursuant to the respective contracts. In the alternative, the measure of damages is the cost to fully and completely repair the Project.

The measure of damages for the tort/negligence causes of action are all out-of-pocket costs, plus all current and future lost revenue, profits, diminution in value, future repair costs, along with all other direct, special, or consequential damages. Plaintiffs also request that EBCO be required to disgorge and forfeit all fees from the Project, as a result of the breach of its fiduciary duty.

As its final prayer in its petition, RLJ requested "that upon final hearing, [it] have judgment against the Defendants, jointly and severally, for [its] damages, interest, attorneys' fees, costs, and any other relief to which [it] may be entitled."

Based on pre-trial rulings and other proceedings, the only remaining defendants and claims as trial neared were breach-of-contract claims against Elness, EBCO, and Terracon. The evidence presented at trial regarding damages included the invoices discussed above showing work done to the hotel to fix the problems caused by the defective foundation, RLJ's expert's testimony about the diminished market value of the property due to the defective foundation, and various other testimony and exhibits evidencing damage to the hotel due to the defective foundation. None of the evidence presented to the jury was apportioned to each defendant that allegedly caused it; all of the evidence focused on the totality of the damage caused to the hotel. In fact, RLJ's expert on the diminished market value of the hotel testified on cross-examination that he did not allocate damages among the defendants. Specifically, the following exchange occurred between the expert and Elness's counsel:

> Elness's Counsel: [Y]our opinions also tell the jury nothing about who, if anybody, was responsible for the diminution in value that the hotel may have experienced, can it?

> RLJ's Expert: That's correct. I did not try to parse that or allocate that, no, sir.

> Elness's Counsel: So to the extent the geotechnical engineer, Terracon, is responsible for any reduction in the hotel's value, you're not able to parse that out, as you said, from anyone else?

> RLJ's Expert: I am not.

After the jury returned its verdict, Elness filed a motion requesting that the trial court apply the one-satisfaction rule by applying settlement credits to the jury's damage award based on the settlement agreements RLJ made with EBCO and Terracon. Elness provided copies of the settlement agreements, which indicate that EBCO agreed to pay RLJ $1.1 million and Terracon agreed to pay RLJ $70,000. After Elness satisfied its burden to provide evidence of the settlement agreements and amounts, RLJ had the burden to show that the settlement amounts were apportioned to separate rather than joint damages. *Casteel*, 22 S.W.3d at 391–92; *Galle*, 262 S.W.3d at 574. Most of RLJ's response to Elness's request for the application of settlement credits is devoted to arguments that the one-satisfaction rule should not apply to this case, and the response only briefly addressed the allocation of damages. When it did so, it stated that its settlement agreement with EBCO "clearly shows that the settlement … was for damages relating to construction and EBCO's contract" and cites specifically to provisions in the settlement agreement that provide that the settlement did not release claims for damages that RLJ may have against Elness.

However, the settlement agreement's language does not establish an allocation of damages associated with each defendant's liability. As explained above, all of RLJ's

allegations and evidence regarding damages were based on a single injury—a defective structure—that was the alleged result of all of the defendants' work. The settlement agreement with EBCO therefore encompasses RLJ's claims for damages that were allegedly jointly caused—namely, the mistakes made by all of the defendants in causing a defective foundation that then caused damage to the hotel. Thus, RLJ did not meet its burden of allocating any portion of the settlement amount for which only EBCO was allegedly liable for damages. *See Casteel*, 22 S.W.3d at 391–92; *Galle*, 262 S.W.3d at 572–74. Regarding RLJ's settlement agreement with Terracon, RLJ did not address the agreement in its response to Elness's request for the application of settlement credits and therefore also failed to meet its burden of allocating damages with respect to Terracon.[6]

▇▇▇ Because RLJ failed to apportion damages to each defendant, the trial court properly applied the total of the two settlement amounts, which was $1,170,000, to the jury's awards of damages. *See Ellender*, 968 S.W.2d at 928; *Galle*, 262 S.W.3d at 574. However, RLJ also raises several sub-issues about the applicability and constitutionality of the one-satisfaction rule in this case, and we will now turn to each of them to explain why they do not change our conclusion. In its first sub-issue, RLJ argues that joint and several liability is required for the application of the one-satisfaction rule. We disagree, and in doing so, we emphasize that the application of the one-satisfaction rule is determined by *the injury sustained. See Galle*, 262 S.W.3d at 573; *Osborne v. Jauregui, Inc.*,

252 S.W.3d 70, 75 (Tex. App.–Austin 2008, pet. denied). As we stated above, the reason for this is that the purpose of the one-satisfaction rule is to ensure that a plaintiff recovers only one satisfaction of its damages for a single injury. *See Stewart Title*, 822 S.W.2d at 7; *First Title*, 860 S.W.2d at 78; *Galle*, 262 S.W.3d at 573. In using a determination of whether the injury is indivisible as the basis for application of the rule, *Galle* and several other cases have applied the one-satisfaction rule without addressing or requiring joint and several liability.[7] *See Matthews v. Sohn*, No. 13-12-00302-CV, 2013 WL 2949562, at *5 (Tex. App.–Corpus Christi June 13, 2013, no pet.) (mem. op.); *Allan v. Nersesova*, 307 S.W.3d 564, 574 (Tex. App.–Dallas 2010, no pet.); *Galle*, 262 S.W.3d at 573–74; *Osborne*, 252 S.W.3d at 75, 78; *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 70–71 (Tex. App.–Texarkana 2004, pet. denied); *Oyster Creek Fin. Corp. v. Richwood Inv. II, Inc.*, 176 S.W.3d 307, 326–29 (Tex. App.–Houston [1st Dist.] 2004, pet. denied); *Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 504 (Tex. App.–Texarkana 2002, pet. denied). We therefore reject this argument.

▇▇▇ In its second sub-issue, RLJ contends that the jury in this case could not have awarded damages for an "indivisible injury" because RLJ's counsel argued in closing arguments that the jury should reduce its awards by twenty percent due to the other defendants' roles in causing the defective hotel and because the question posed to the jury specifically asked for the amount that would compensate RLJ

---

6. RLJ notes in its brief that it "was not given the opportunity to segregate or apportion damages to satisfy the trial court's reasoning before the case was submitted to the jury," but does not cite to any portion of the record supporting this assertion.

7. To the extent that our holding in this case conflicts with *CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 684–85 (Tex. App.–Austin 2005, no pet.), we overrule *CTTI*.

for damages "that resulted from [Elness's] failure to comply with [the hotel contract]." However, as we discussed above, RLJ did not present evidence of damages related solely to Elness's actions. All of the damages presented to the jury—the expert's testimony on diminished market value, the invoices showing repairs made to the hotel, etc.—were lumped together without any apportionment among the alleged actions of each defendant. As plaintiff, RLJ had the burden of proof on its breach-of-contract claim, and an essential element of a breach-of-contract claim is the existence and amount of damages resulting from the alleged breach. *See Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App.–Dallas 2014, no pet.); *Jarvis v. Peltier*, 400 S.W.3d 644, 653 (Tex. App.–Tyler 2013, pet. denied); *Ekpe v. CACH, LLC*, No. 03-10-00274-CV, 2011 WL 1005379, at *6 n.1 (Tex. App.–Austin Mar. 16, 2011, no pet.) (mem. op.). A comment by RLJ's counsel that the jury should reduce each of its awards by twenty percent is not evidence and does not seem to be based on any evidence presented at trial. The question posed to the jury also does not establish that the jury considered separate injuries rather than an indivisible injury, as the jury could base its verdict only on the evidence presented to it, which was unsegregated evidence of damages allegedly caused by all of the defendants. Thus, the jury had no evidence on which to base an award only on Elness's breach of the hotel contract. Further, the cases cited by RLJ in support of its argument are distinguishable from this case, as none of them involve a lack of evidence supporting individually caused damages. *See, e.g., Byer Custom Builders v. Franks*, 389 S.W.3d 880, 881 (Tex. App.–Houston [14th Dist.] 2012, no pet.); *Robertson v. ADJ P'ship*, 204 S.W.3d 484, 495 (Tex. App.–Beaumont 2006, pet. denied); *Tesfa v. Stewart*, 135 S.W.3d 272, 274–75 (Tex.

App.–Fort Worth 2004, pet. denied). Accordingly, we reject this argument.

In its third sub-issue, RLJ asserts that the one-satisfaction rule applies only to tort cases, not breach-of-contract cases. RLJ acknowledges that several cases, including cases from this Court, explicitly state that the application of the one-satisfaction rule is not limited to tort cases but argues that "the cases suggesting tort liability is not necessarily required are distinguishable in light of a complete analysis of the authority relied upon to make that suggestion." We are unpersuaded by RLJ's argument. We have already determined that the one-satisfaction rule can apply to breach-of-contract cases. Specifically, in *Galle*, we stated, "In cases where [the statutory scheme for application of the one-satisfaction rule in tort cases] or another settlement credit scheme does not apply, the 'one-satisfaction' rule may require a trial court to reduce a damage recovery based on a settlement." 262 S.W.3d at 573. We further stated that "[t]he application of the rule is not limited to tort claims, and whether the rule may be applied depends not on the cause of action asserted but rather the injury sustained." *Id.* As RLJ acknowledges, other cases support this conclusion. *See Matthews*, 2013 WL 2949562, at *14; *Allan*, 307 S.W.3d at 574; *Osborne*, 252 S.W.3d at 75; *Metal Bldg. Components, LP v. Raley*, No. 03-05-00823-CV, 2007 WL 74316, at *19 n.22 (Tex. App.–Austin Jan. 10, 2007, no pet.) (mem. op.); *Oyster Creek*, 176 S.W.3d at 327–29; *Goose Creek*, 74 S.W.3d at 491, 504. Because we have already concluded that the one-satisfaction rule can apply to breach-of-contract cases, and because we are unpersuaded that we should change that conclusion, we reject this argument.

In its fourth sub-issue, RLJ argues that the application of the one-satis-

faction rule in breach-of-contract cases violates Section 16 of Article 1 of the Texas Constitution. *See* Tex. Const. art. 1, § 16. Specifically, RLJ contends that the application of the rule "substantially impairs a contractual relationship by "effectively tak[ing] from the injured party the benefit of its settlement with another defendant to reduce the wrongdoer's liability" and "creates ... a disincentive to settle." Section 16 states that "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." *Id.* Elness argues that a trial court's application of the one-satisfaction rule is not a "law" because a decision of a court is not a law. We agree. The legislature makes laws, and the judiciary interprets them. Decisions of a court are not "laws" for the purposes of Section 16. *See Howell v. Texas Workers' Comp. Comm'n,* 143 S.W.3d 416, 444 (Tex. App.–Austin 2004, pet. denied) ("[Section 16] applies to 'laws,' which do not include decisions of a court."); *Amalgamated Transit Union, Local Div. 1338 v. Dallas Pub. Transit Bd.,* 430 S.W.2d 107, 119 (Tex. Civ. App.— Dallas 1968, writ ref'd n.r.e.) (citing *Storrie v. Cortes,* 90 Tex. 283, 38 S.W. 154, 156 (1896) (discussing United States Constitution)) ("A decision of a court is not a law, within the provisions of the Constitution relating to impairment of contracts.").

RLJ cites to only one case for the proposition that Section 16's reference to "laws" includes judicial decisions. *See Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653, 664 (Tex. 2008). However, *Fairfield* addressed whether exemplary damages for gross negligence were insurable, which required an analysis that included an assessment of the public policy of Texas with respect to the issue. *Id.* at 655. The *Fairfield* court mentioned Section 16 only in support of its general statement that the court "ha[d] long recognized Texas' strong public policy in favor of preserv-

ing the freedom to contract." *Id.* at 664. Thus, *Fairfield* does not provide support for RLJ's position. Because a court's application of the one-satisfaction rule is not a "law" prohibited by Section 16, we reject this argument.

In its fifth sub-issue, RLJ asserts that Elness waived the right to seek the application of the one-satisfaction rule. Specifically, RLJ argues that Elness waived the application of the rule because Elness failed to (1) specially except to RLJ's failure to allocate damages, (2) request a jury question or instruction requiring damages allocation, and (3) plead the one-satisfaction rule as an affirmative defense. Within this sub-issue, RLJ also contends that "the post-verdict assertion of the one [satisfaction] rule is also precluded by laches."

We note at the outset that it was RLJ's burden, as the plaintiff in a breach-of-contract suit, to establish damages as a result of *Elness's* breach of the hotel contract in order to be entitled to damages from Elness. *See Emerson Constr. Co. v. Ranger Fire, Inc.,* No. 03-09-00567-CV, 2013 WL 4817551, at *6 (Tex. App.–Austin Aug. 29, 2013, no pet.) (mem. op.) (listing elements of breach-of-contract claim, including damages sustained by plaintiff as result of defendant's breach); *Southern Elec. Servs., Inc. v. City of Houston,* 355 S.W.3d 319, 323–24 (Tex. App.–Houston [1st Dist.] 2011, pet. denied) (same). Further, as we set forth above, Elness's burden as the party seeking settlement credits was to prove the settlement amounts, as we have already determined that Elness did here. *Utts,* 81 S.W.3d at 828; *Ellender,* 968 S.W.2d at 927; *Galle,* 262 S.W.3d at 572. Nevertheless, we will turn now to each of RLJ's specific arguments.

Regarding RLJ's first argument—that Elness was required to specially except to RLJ's failure to allocate damages in its

petition in order to later raise the one-satisfaction rule—RLJ cites to no authority supporting this position. The two citations RLJ provides do not address the one-satisfaction rule or the circumstances in this case and instead are general authorities regarding the obligation to specially except to pleadings or else waive one's right to seek reversal on that ground. *See* Tex. R. Civ. P. 90; *Bullock v. Regular Veteran's Ass'n of U.S., Post No. 76*, 806 S.W.2d 311, 314 (Tex. App.–Austin 1991, no writ). Those circumstances are not present in this case. Accordingly, we reject this argument.

We also reject RLJ's second argument—that Elness waived its right to seek the application of the one-satisfaction rule because it did not request a jury question or instruction about damages allocation. Elness was not required do so in order to assert the one-satisfaction rule. *See National City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 888 (Tex. App.–Houston [14th Dist.] 2013, pet. denied) (citing *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex.1998) (per curiam)). We also note that RLJ again does not cite to authority applicable to the circumstances of this case and instead cites only to authority supporting the proposition that an appellant who requests reversal based on an alleged erroneous jury instruction or question (or failure to submit a jury instruction or question) must preserve error in the trial court. *See* Tex. R. Civ. P. 278; *Dick's Last Resort of W. End, Inc. v. Market/Ross, Ltd.*, 273 S.W.3d 905, 919 (Tex. App.–Dallas 2008, pet. denied); *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 585 (Tex. App.–Houston [1 Dist.] 2007, pet. denied).

We further reject RLJ's third argument—that Elness waived its right to seek the application of the one-satisfaction rule by failing to plead the rule as an affirmative defense—as Elness was not required to plead the rule as an affirmative defense in order to seek application of it. *See Ortiz*, 401 S.W.3d at 888.

Regarding RLJ's final argument—that Elness's assertion of the one-satisfaction rule was precluded by laches—we are likewise unpersuaded. Laches is an equitable remedy that prevents a plaintiff from asserting a claim due to a lapse of time. *Green v. Parrack*, 974 S.W.2d 200, 203–04 (Tex. App.–San Antonio 1998, no pet.); *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 912 (Tex. App.–Houston [1st Dist.] 1995, writ denied). To prevail, the party asserting laches must show two elements: (1) there was an unreasonable delay by the other party in asserting legal or equitable rights, and (2) the party asserting laches made a good-faith change in position to his detriment because of the delay. *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989). RLJ does not cite to any authority applying the affirmative defense of laches to a request for application of the one-satisfaction rule and does not provide citations from the record to support either element of laches but rather states only that "[b]y [Elness's] failure to raise the one satisfaction rule prior to verdict, RLJ had no reason whatsoever to anticipate any need to adduce any evidence segregating damages."

However, as we stated above, it was RLJ's burden to prove damages attributable to Elness due to Elness's alleged breach of the hotel contract. We further note that Elness stated in its Answer that:

[P]ursuant to Chapter 33 of the Texas Civil Practice and Remedies Code, Defendants are entitled to a credit for any settlement Plaintiffs receive from any other person or entity. If Plaintiffs settle with any other person or entity, then

Defendants reserve the right to make a written election of credit for settlement under [Chapter 33] of the Texas Civil Practice and Remedies Code.

Although Elness referenced only the statutory authority for the application of settlement credits for torts, the reference was nevertheless some notice that Elness intended to assert the one-satisfaction rule if RLJ settled with other defendants and that RLJ should be prepared for such an event. Because RLJ has not shown that laches applies under the circumstances of this case, we reject this argument.

Given the foregoing, we conclude that the trial court did not err in applying the one-satisfaction rule in this case, and we overrule this issue. *See Ellender*, 968 S.W.2d at 928; *Galle*, 262 S.W.3d at 574.

### Attorney's Fees Awarded to RLJ

Elness challenges the trial court's award of attorney's fees to RLJ, arguing that the trial court erred in awarding RLJ its fees because RLJ did not recover any damages after the application of the settlement credits and was therefore not a prevailing party under Chapter 38 of the Texas Civil Practices & Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 38.001. Generally, we review a trial court's award of attorney's fees under an abuse-of-discretion standard. *See Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). However, when the issue is whether Texas law recognizes a particular basis for the recovery of attorney's fees, as it is here, we review the issue de novo. *See Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam) (availability of attorney's fees under particular statute is question of law); *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) (appellate courts review questions of law de novo); *DeNucci v. Matthews*, 463 S.W.3d 200, 209 (Tex. App.–Austin 2015, no pet.).

Attorney's fees are recoverable in a suit only if they are authorized by contract or statute. *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013); *MBM Fin. Corp. v. The Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Section 38.001(8) provides for the recovery of attorney's fees in a suit on a contract. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8). To recover attorney's fees under Chapter 38 in a breach-of-contract suit, a party must (1) prevail on the underlying claim and (2) recover damages. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172–73 (Tex. 2013); *MBM Fin.*, 292 S.W.3d at 666; *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004).

Elness argues that RLJ was not entitled to attorney's fees from Elness because, although RLJ was awarded damages by the jury, it did not actually recover damages due to the application of the settlement credits and was thus not a "prevailing party." Because of Texas Supreme Court precedent on the recovery of attorney's fees, we must agree. *See Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 652 (Tex. 2009); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). In *Intercontinental*, the supreme court held that a plaintiff who received a jury verdict that the defendant breached a contract between the parties but also was awarded $0 in actual damages was not a "prevailing party" under the parties' contract. 295 S.W.3d at 655–56. We note that the court addressed the term "prevailing party" as it was used within the party's contract rather than in the context of Chapter 38 but that Chapter 38 also requires that a party "prevail" on the underlying claim. Further, the *Intercontinental* court referenced Chapter 38 in its opinion, stating that the statute did not control in that case but that the result of

the case would have been the same if it had. *Id.* at 653.

The supreme court explicitly stated in *Intercontinental* that it was following precedent from the United States Supreme Court and quoted the following provisions from a U.S. Supreme Court case, which held that the plaintiff "prevailed" in the suit and was therefore entitled to attorney's fees because he was awarded one dollar in damages:

> [T]o qualify as a prevailing party, a ... plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain *an enforceable judgment against the defendant from whom fees are sought*, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures *must directly benefit him at the time of the judgment* or settlement. Otherwise the judgment or settlement cannot be said to "affect the behavior of the defendant toward the plaintiff." Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *A judgment for damages in any amount,* whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay.

*Id.* at 654 (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)) (emphases added). The *Intercontinental* court ultimately concluded as follows: "We agree with the United States Supreme Court, which holds that to prevail, a claimant must obtain actual and meaningful relief, something that materially alters the parties' legal relationship. That is, a plaintiff must prove compensable injury *and secure an enforceable judgment in the form of damages or equitable relief." Id.* at 652 (emphasis added).

 The language from *Intercontinental* that we have emphasized above makes it clear that we must look to the judgment, not preliminary verdicts or rulings, as the critical component of our analysis regarding whether a party "prevailed" in a suit and is thus entitled to attorney's fees. Other cases from this Court decided after *Intercontinental* confirm this conclusion. *See Continental Healthcare, Inc. v. Remedy Therapy Staffing, PLLC,* No. 03-14-00464-CV, 2016 WL 6068258, at *4–5 (Tex. App.–Austin Oct. 14, 2016, no pet.) (mem. op.); *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman,* 408 S.W.3d 696, 703–04 (Tex. App.–Austin 2013, no pet.). Here, the trial court properly applied settlement credits to the jury awards, leaving RLJ with less than $0 in damages. The final judgment from the trial court reflected the application of the settlement credits ($1,170,000) to the total of the amount of actual damages ($785,000) plus attorney's fees ($901,650.96), leaving RLJ with a judgment for the remainder of the attorney's fees, which was $516,650.96.[8] The bottom line is that the application of the settlement credits reduced the judgment award of actual damages to less than $0. Thus, RLJ did not obtain an "enforceable judgment" against Elness for damages that "modifie[d] [Elness's] behavior for [RLJ's] benefit by forcing [Elness] to

---

8. We need not address the propriety of the application of the settlement credits to the attorney's fees award as neither party raises the issue.

pay an amount of money [it] otherwise would not pay." *Intercontinental*, 295 S.W.3d at 654 (quoting *Farrar*, 506 U.S. at 111–12, 113 S.Ct. 566).[9]

Taking Texas Supreme Court precedent into account, as we must, the circumstances of this case compel us to reach the conclusion that the trial court erred in awarding attorney's fees to RLJ. *See id.* at 652; *Green Int'l*, 951 S.W.2d at 390; *see also Continental*, 2016 WL 6068258, at *4–5;*Giggleman*, 408 S.W.3d at 703–04. Accordingly, we must sustain this issue and reverse and render judgment that RLJ take nothing.

### Issue on Cross–Appeal: Segregation of Attorney's Fees

In its second issue on cross-appeal, RLJ contends that the trial court erred in segregating the attorney's fees "expended on RLJ's claim against [Elness] from those on its claims against [EBCO and Terracon]." Because we have determined that RLJ was not entitled to any attorney's fees from Elness, we need not reach this issue. *See* Tex. R. App. P. 47.1.

## CONCLUSION

We reverse the trial court's final judgment and render judgment that RLJ take nothing.

Reversed and Rendered

Chief Justice Rose, Not Participating

---

9. We further note that there is a line of cases from intermediate courts of appeals dated before *Intercontinental* that hold that plaintiffs in DTPA suits who receive a jury award for damages are not entitled to attorney's fees if they have already settled for an amount greater than the jury award against the non-settling defendant. *See Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 7 (Tex. App.–Waco 2007, pet. denied); *Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 591 (Tex. App.–Houston [1st Dist.] 2001, no pet.); *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 806–07 (Tex. App.–Dallas 1988, no writ).